TUCKER ELLIS LLP
MOLLIE F. BENEDICT SBN 187084
mollie.benedict@tuckerellis.com
MONEE TAKLA HANNA SBN 259468
monee.hanna@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071-2223
Telephone:  213.430.3400
Facsimile:  213.430.3409

DUSTIN B. RAWLIN, appearance *pro hac vice*
dustin.rawlin@tuckerellis.com
950 Main Street, Suite 1100
Cleveland, OH 44113-7213
Telephone:  216.592.5000
Facsimile:  216.592.5009

Attorneys for Defendant MENTOR WORLDWIDE LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARA EBRAHIMI, | Case No. 2:16-cv-07316-DMG-KS |
|         Plaintiff, | Hon. Dolly M. Gee |
|    v. | **DEFENDANT MENTOR WORLDWIDE LLC'S NOTICE OF MOTION AND RULE 12(b)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM** |
| MENTOR WORLDWIDE LLC; JOHNSON & JOHNSON SERVICES, INC. | |
|         Defendants. | [Filed concurrently with Memorandum of Points and Authorities; Request for Judicial Notice; Declaration of Mollie F. Benedict; and [Proposed] Order] |
| | **Date:** February 10, 2017 |
| | **Time:** 9:30 A.M. |
| | **Courtroom:** 8C |

*TUCKER ELLIS LLP*
Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

2922003.1

**TO PLAINTIFF SARA EBRAHIMI AND HER ATTORNEY OF RECORD:**

**PLEASE TAKE NOTICE** that on February 10, 2017, at 9:30 a.m. or as soon thereafter as the matter may be heard in Courtroom 8C of the above-referenced court, located at 350 W. 1st Street, Los Angeles, California, 90012, Defendant Mentor Worldwide LLC ("Mentor") will and does hereby move to dismiss Plaintiff's Complaint in its entirety, with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6).

This Motion is based on the grounds that Plaintiff Sara Ebrahimi's claims are expressly preempted by the Medical Device Amendments to the Federal Food, Drug and Cosmetic Act, 21 U.S.C.§ 360k because the device at issue in this action, a Mentor MemoryGel Silicone Breast Implant, is a Class III medical device that was evaluated and approved pursuant to the U.S. Food and Drug Administration's premarket approval (PMA) process.  To the extent Plaintiff's claims seek to enforce federal regulations governing the device, they are also impliedly preempted under *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341. Further, Plaintiff's claims are inadequately pled and subject to dismissal for independent state law reasons.

This Motion is based upon this Notice of Motion and Motion; the attached Memorandum of Points and Authorities in support thereof; the concurrently filed Declaration of Mollie F. Benedict; the concurrently filed Request for Judicial Notice; the pleadings and documents on file in this case and on such other written or oral arguments as may be presented at or before the hearing on this Motion.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on November 15, 2016.

DATED:  November 23, 2016            TUCKER ELLIS LLP

                                     By:  /s/Mollie F. Benedict
                                          Mollie F. Benedict
                                          Attorneys for Defendant Mentor
                                          Worldwide LLC

2922003.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT.................................1

II.   FACTUAL BACKGROUND.........................................................2

III.  ARGUMENT ........................................................................4

    A.    Legal Standard........................................................................4

    B.    Federal Law Bars Plaintiff's Claims ...........................................6

        1.    The Medical Device Amendments to the Food, Drug
and Cosmetic Act Preempt Additional or Different State
Law Requirements Related to the Safety or
Effectiveness of a Federally Approved Medical Device ................6

            (a)    Medical Device Amendments of 1976 .............................6

            (b)    Medical Device Preemption Under Riegel...........................8

            (c)    Implied preemption under Buckman .................................12

        2.    The FDA Has Mandated Specific Requirements for the
Manufacture, Design, and Labeling of Mentor Silicone
Breast Implants ..................................................................13

        3.    Plaintiff's Strict Liability Claims (Counts 1 & 2)
Conflict with the FDA Requirements for the
Manufacture, Labeling, and Alteration of Mentor
MemoryGel Silicone Breast Implants and Are
Therefore Preempted..........................................................14

        4.    Plaintiff Has Not Pled a Plausible Parallel claim That
Survives Express and Implied Preemption. ...............................16

            (a)    Plaintiff fails to plead a parallel manufacturing defect
claim.................................................................17

            (b)    Plaintiff's negligence per se claim is impliedly
preempted. ..............................................................17

        5.    Plaintiff Has Not Alleged Causal Nexus Between the
Alleged Violations and Her Injuries. ........................................18

i

2922003.1

6.      Numerous Courts Have Held State Law Claims Related to Breast Implants Are Preempted .................................................19

C.      Plaintiff's Negligence Per Se Claim is Not Cognizable. ........................20

III.   CONCLUSION.................................................................................................21

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2922003.1

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alfred v. Mentor Corp.*,
No. 05-483, 2007 WL 708631 (W.D. Ky. Mar. 5, 2007).........................................20

*Anderson v. Medtronic*,
No. 14-cv-00615-BAS(RBB), 2015 WL 2115342 (S.D. Cal. May 6, 2015).....11, 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................................4

*Batchelor v. Pfizer, Inc.*,
2013 WL 3873242 (M.D. Ala. July 25, 2013) .......................................................21

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..........................................................................................4, 5

*Bridgeman v. United States*,
2011 WL 221639 (E.D. Cal. Jan. 21, 2011) .........................................................21

*Buckman Co. v. Plaintiffs' Legal Comm.*,
531 U.S. 341 (2001).....................................................................................passim

*Cipollone v. Liggett Group, Inc.*,
505 U.S. 504 (1992)..............................................................................................6

*Cohen v. Guidant Corp*,
No. CV-05-8070-R, 2011 WL 637472 (C.D. Cal. Feb. 15, 2011).........................11

*Cottengim v. Mentor Corp.*,
No. 05-161, 2007 WL 2782885 (E.D. Ky. Sept. 24, 2007).....................................20

*Couvillier v. Allergan Inc.*,
No. 10-1383, 2011 WL 8879258 (W.D. La. Jan. 20, 2011)...................................19

*Covert v. Stryker Corp.*,
No. 1L:08CV447, 2009 WL 2424559 (M.D.N.C. Aug. 5, 2009) .............................6

*Dorsey v. Allergan, Inc.*,
No. 08-0731, 2009 WL 703290 (M.D. Tenn. Mar. 11, 2009)................................20

*Dunbar v. Medtronic, Inc.*,
No. CV 14-01529-RGK(AJWx), 2014 WL 3056026 (C.D. Cal. June 25, 2014) ....11

*Erickson v. Boston Scientific Corp.*,
846 F. Supp. 2d 1085 (C.D. Cal. 2011) ....................................................10, 11, 14

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Ford v. Mentor Worldwide, LLC*,
No. 2:13-cv-06317 (E.D. La. Dec. 17, 2013) .......................................................... 19

*Frere v. Medtronic*,
No. EDCV 15-02338-BRO(DTBx), 2016 WL 1533524 (C.D. Cal. Apr. 6, 2016) . 19

*Grant v. Corin*,
No. 3:15-CV-169-CAB-BLM, 2016 WL 4447523  (S.D. Cal. Jan. 16, 2016) .. 10, 20

*Haddock v. Mentor Texas*,
No. 03-cv-2311, 2005 WL 3542563 (N.D. Tex. Mar. 25, 2005) ............................. 20

*Harris v. Mentor Worldwide LLC*,
No. 12-cv-916 (E.D. Cal. Aug. 21, 2012)............................................................... 19

*Hawkins v. Medtronic, Inc.*,
No. 1:13-CV-499 AWI SKO, 2014 WL 346622 (E.D. Cal. Jan. 30, 2014)............. 12

*Herbert v. Mentor*,
No. 04-413, 2007 WL 2893387 (D.N.J. Sept. 28, 2007)........................................ 20

*Horn v. Thoratec Corp.*,
376 F.3d 163 (3d Cir. 2004) .................................................................................. 15

*Houston v. Medtronic*,
957 F. Supp. 2d 1166 (C.D. Cal. 2013) .................................................................. 15

*Ilarraza v. Medtronic, Inc.*,
677 F. Supp. 2d 582 (E.D.N.Y. 2009) .................................................................... 17

*In re Gilead Scis. Secs. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ................................................................................. 5

*In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig. ("Medtronic Leads")*,
592 F. Supp. 2d 1147 (D. Minn. Jan. 5, 2009) ................................................ 11, 17

*In re Medtronic, Inc., Sprint Fidelis Prods. Liab. Litig.*,
623 F.3d 1200 (8th Cir. 2010) ............................................................................... 12

*Kashani-Matts v. Medtronic*,
No. SACV 13-01161, 2013 WL 6147032 (C.D. Cal. Nov. 22, 2013) .............. 11, 13

*Malonzo v. Mentor Worldwide, LLC*,
No. C 14-01144, 2014 WL 2212235 (N.D. Cal. May 28, 2014)............................. 19

*McGuan v. Endovascular Technologies, Inc.*,
182 Cal. App. 4th 974 (Cal. App. Ct. 2010)........................................................... 11

*Medtronic, Inc. v. Lohr*,
518 U.S. 470 (1996)................................................................................... 3, 6, 7, 9

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

*Millman v. Medtronic*,
No. 14-cv-1465, 2015 WL 778779 (D.N.J. Feb. 24, 2015) ........................................ 18

*Motus v. Pfizer Inc.*,
358 F.3d 659 (9th Cir. 2004) .................................................................................... 15

*Nimtz v. Cepin*,
No. 08cv1294, 2011 WL 831182 (S.D. Cal. Mar. 3, 2011) ............................... 10, 11

*Norton v. Independence Technology* ,
No. 2:10-CV-03218-MCE, 2011 WL 3584491 (E.D. Cal. Aug. 15, 2011) ......... 6, 11

*Pearsall v. Medtronics, Inc.*,
147 F. Supp. 3d 188 (E.D.N.Y. 2015) ....................................................................... 17

*People v. Kinder Morgan Energy Partners, L.P.*,
569 F. Supp. 2d 1073 (S.D. Cal. 2008) ..................................................................... 20

*Perez v. Nidek Co., Ltd.*,
711 F.3d 1109 (9th Cir. 2013) ............................................................................. 12, 16

*Quiroz v. Seventh Ave. Ctr.*,
140 Cal. App. 4th 1256 (2006) .................................................................................. 20

*Rhynes v. Stryker Corp.*,
No 10-5619, 2011 WL 5117168 (N.D. Cal. Oct. 27, 2011) ............................... 10, 11

*Riegel v. Medtronic, Inc.*,
552 U.S. 312, 128 S.Ct. 999 (2008) .................................................................. passim

*Schwarz v. United States*,
234 F.3d 428 (9th Cir. 2000) ...................................................................................... 5

*Shaw v. Hahn*,
56 F.3d 1281 (9th Cir. 1995) ...................................................................................... 5

*Simmons v. Boston Scientific Corp.*,
No. CV 12-7962, 2013 WL 1207421 (C.D. Cal. Mar. 25, 2013) .............................. 11

*Walker v. Medtronic, Inc.*,
670 F.3d 569 (4th Cir. 2011) ............................................................................... 10, 16

*Williams v. Allergan USA, Inc.*,
No. CV-09-1160, 2009 WL 3294873 (D. Ariz. Oct. 14, 2009) ............................... 19

*Wolicki-Gables v. Arrow In'l, Inc.*,
634 F.3d 1296, 1301 (11th Cir. 2011) ............................................................... 10, 17

**STATUTES**

21 C.F.R. § 801.109 ........................................................................................................ 4

21 C.F.R. § 814.44(d)(1) .................................................................. 3, 5

21 C.F.R. § 814.80 ............................................................................ 3

21 C.F.R. § 814.82 ............................................................................ 4

21 C.F.R. § 814.82(a)(2) ................................................................... 3

21 C.F.R. § 878.3530 ........................................................................ 2

21 C.F.R. § 878.3530(c) .................................................................... 2

21 U.S.C. § 301 ....................................................................... 1, 6, 13

21 U.S.C. § 337(a) ............................................................................ 12

21 U.S.C. § 360 .......................................................................... 2, 13

21 U.S.C. § 360c(a)(1) ...................................................................... 6

21 U.S.C. § 360c(a)(1)(C)(ii) ........................................................... 7

21 U.S.C. § 360c(a)(2)(C) ................................................................ 7

21 U.S.C. § 360e(d) .......................................................................... 7

21 U.S.C. § 360e(d)(1)(A) ................................................................ 7

21 U.S.C. § 360e(d)(2) ...................................................................... 3

21 U.S.C. § 360e(d)(6)(A)(i) ............................................................ 3

21 U.S.C. § 360j(e)(1) ................................................................... 3, 7

21 U.S.C. § 360k(a) ..................................................................... 8, 14

44 U.S.C. § 1507 .............................................................................. 5

**OTHER AUTHORITIES**

U.S. Const., art. VI, cl. 2 ................................................................. 7

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

2922003.1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

This is a product liability action concerning Mentor's MemoryGel Silicone Breast Implants, which are "Class III" medical devices approved by the U.S. Food and Drug Administration ("FDA") through the premarket approval process after the device's design, manufacture, and labeling was approved, and the product was found to be safe and effective by the FDA. Plaintiff Sara Ebrahimi ("Plaintiff") asserts three claims against Mentor Worldwide LLC ("Mentor") based on the manufacture and labeling of its MemoryGel Silicone Breast Implants.   The Court should dismiss Plaintiff's claims against Mentor under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted.

*First*, the U.S. Supreme Court's decision in *Riegel v. Medtronic, Inc.*, 552 U.S. 312 (2008), requires dismissal of Plaintiff's strict liability claims (Counts 1 & 2) against Mentor.  The Supreme Court in *Riegel* held that federal law bars individual state law personal injury claims challenging the safety and effectiveness of medical devices like Mentor's MemoryGel Silicone Breast Implants at issue here.  *Id.* at 322– 25.  Plaintiff's Complaint is composed entirely of state law claims challenging the safety and effectiveness of Mentor's MemoryGel Silicone Breast Implants.  Under *Riegel*, these state-law products liability claims, if successful, would impose design, manufacturing, or labeling requirements different from, or in addition to, those approved by the FDA as safe and effective and therefore are preempted by the Medical Device Amendments, 21 U.S.C. §§ 360 *et seq.*, to the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §§ 301 *et seq*. Nor has Plaintiff alleged a viable state-law "parallel" claim that survives express preemption.

*Second*, to the extent Plaintiff's claims seek to enforce federal regulations governing the device, they are impliedly preempted under *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341.  Plaintiff's attempt to circumvent express and implied preemption fails because there is no private right of action under the FDCA.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Third, in addition to being impliedly preempted, Plaintiff's negligence per se claim (Count 3) fails because negligence per se is not an independent cause of action under California law.

This Court should thus grant Mentor's Rule 12(b)(6) motion to dismiss and dismiss Plaintiff's claims as a matter of law.

## II.   **FACTUAL BACKGROUND**

On June 5, 2013, Plaintiff Sara Ebrahimi was surgically implanted with Mentor MemoryGel Silicone Breast Implants. *See* Compl. ¶ 19. On October 2, 2013, Plaintiff underwent revision surgery on her left breast due to lateral malposition. *Id*. ¶ 21. Plaintiff alleges that following her revision surgery, she experienced various injuries including shrinkage of both breasts, "generalized weakened condition," and an autoimmune disorder as a result of an alleged "significant gel bleed" and was scheduled to have her implants removed in October 2016. *Id*. ¶¶ 22–26, 55. Plaintiff filed her Complaint on September 28, 2016. Plaintiff has asserted causes of action for: (1) strict liability failure to warn; (2) strict liability manufacturing defect; and (3) negligence per se.[1]  All of Plaintiff's factual allegations, and the basis for her damages, relate solely to the safety and effectiveness of the device.

The Mentor MemoryGel Silicone Breast Implants implanted in Plaintiff are Class III medical devices as defined by 21 C.F.R. § 878.3530.  The most stringent controls apply to Class III devices under the Medical Device Amendments, 21 U.S.C. §§ 360 *et seq*., to the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §§ 301 *et seq*. *See Riegel,* 552 U.S. at 316.  Because of its Class III status, the commercial sale of Mentor MemoryGel Silicone Breast Implants to healthcare professionals was conditioned upon the device receiving premarket approval from the FDA.  *See* 21 C.F.R. § 878.3530(c).

---

[1] Plaintiff voluntarily dismissed Johnson & Johnson Services on October 17, 2016. *See* Docket No. 11.

Premarket approval ("PMA") is the process by which a manufacturer provides the FDA with a "reasonable assurance" that a Class III device is both safe and effective. *See* 21 U.S.C. § 360e(d)(2). Premarket approval is a "rigorous" process that requires a manufacturer to submit a PMA application containing specific information and data about the safety and efficacy of a Class III device which is then scrutinized by the FDA. *Riegel*, 552 U.S. at 317–18. This includes the design specifications, manufacturing processes, and labeling being proposed by a manufacturer. *Id*. The FDA grants PMA only if the agency has "reasonable assurance" that the device is safe and effective under the conditions of use included on the label. *See* 21 U.S.C. §§ 360e(d)(2); *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 477 (1996). Additionally, the agency approves the labeling of the product and is free to impose device-specific restrictions by regulation. 21 U.S.C. § 360j(e)(1).

If the Class III device is approved, the FDA issues an approval order. 21 C.F.R. § 814.44(d)(1). The approval order requires the manufacturer to adhere to the design, manufacture, and labeling specifications which the FDA approved as safe and effective as a result of the Class III device undergoing the premarket approval process. *See* 21 C.F.R. § 814.80. Following approval, "the MDA forbids the manufacturer to make, without FDA permission, changes in design specifications, manufacturing processes, labeling, or any other attribute, that would affect safety or effectiveness." *Riegel*, 552 U.S. at 319 (citing 21 U.S.C. § 360e(d)(6)(A)(i)). The FDA may also require post-approval studies as a condition of approval under 21 C.F.R. § 814.82(a)(2).

On December 12, 2003, Mentor submitted a PMA application for its MemoryGel Silicone Breast Implants. *See* PMA Approval Order and Summary of Safety and Effectiveness for P030053, dated November 17, 2006 (attached as Exhibit 1 to Mentor's Request for Judicial Notice ("RJN")). On November 17, 2006, the FDA found that the Mentor MemoryGel Silicone Breast Implants as designed, manufactured and labeled are safe and effective, and the FDA issued an Approval Order. *Id.*; *see also* 72 Fed. Reg. 15,885, 15,886 (April 3, 2007) Notices, TABLE 1: List of Safety and

MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MENTOR'S MOTION TO DISMISS-Case No. 2:16-cv-07316-DMG-KS
2922003.1

Effectiveness Summaries for Approved PMAs Made Available from October 1, 2006 to December 31, 2006 (attached as Exhibit 2 to Mentor's RJN).   Thereafter, Mentor MemoryGel Silicone Breast Implants could only be sold to healthcare professionals in accordance with the design, manufacturing, and labeling specifications approved by the FDA.  *Id.*; *see also* 21 C.F.R. § 801.109.

The Approval Order also outlined six post-approval studies which Mentor agreed to conduct as a condition of approval.[2]   Contrary to Plaintiff's allegation that Mentor "fail[ed] to provide follow-up studies to the FDA" (Compl. ¶ 72), the FDA "[c]losely monitors the status and conduct of the on-going required post-approval studies so that data is collected, validated scientifically and disseminated widely." *See* Exhibit 11 to Compl., FDA Update on the Safety of MemoryGel Silicone Gel-Filled Breast Implants, Executive Summary. The FDA also recognized that "[e]ach study had some patients who were not available for follow-up because they had died or discontinued participation." *Id.* at 9.   Moreover, the FDA is empowered to withdraw premarket approval for a manufacturer's failure to comply with any post-approval requirements. *See* 21 C.F.R. § 814.82.   The approvals for Mentor's MemoryGel Silicone Breast Implants, however,  remain in effect and have never been suspended or withdrawn.

## III.   ARGUMENT

### A.   Legal Standard

Dismissal is warranted under Rule 12(b)(6) when a plaintiff fails to allege facts sufficient "to raise a right to relief above the speculative level" or fails to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 570 (2007).   This "plausibility" standard applies to all claims brought in federal court. *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009).   A claim is plausible only if the

---

[2] Each manufacturer of silicone gel-filled breast implants was required to complete the following post-approval studies as a condition of approval: (1) Core Post-Approval Study;  (2) Large Post-Approval Study;  (3) Device Failure Study;  (4) focus group studies; (5) annual physician informed decision survey;  and (6) adjunct study.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Where a complaint pleads facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). Further, while a court generally must accept well-pleaded facts as true, this principle does *not* apply to legal conclusions, conclusory allegations, or unwarranted factual inferences. *See id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Twombly*, 550 U.S. at 555 ("[P]laintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (citing FED. R. CIV. P. 8(a)); *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (explaining that court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable interferences").

A court also need not accept as true allegations contradicted by judicially noticeable facts. *Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Reference to public FDA records that are entitled to judicial notice does not necessitate conversion of a motion for judgment on the pleadings to one for summary judgment.[3] *See Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995) (noting that a "court may look beyond the plaintiff's complaint to matters of public records" without converting the Rule 12(b)(6) motion into one for summary judgment) (citations omitted); *see also*

---

[3] Because PMA approvals are documented in the Federal Register, courts are *required* to take judicial notice of them. *See* 21 C.F.R. § 814.44(d)(1) (2010) ("FDA will publish in the Federal Register after each quarter a list of the approvals announced in that quarter."); 44 U.S.C. § 1507 ("[t]he contents of the Federal Register shall be judicially noticed."). It is a matter of public record that Mentor MemoryGel Silicone Breast Implants first received PMA on November 17, 2006. *See* Exhibit 1 to RJN; *see also* List of Safety and Effectiveness Summaries for Approved PMAs Made Available from October 1, 2006 to December 31, 2006**,** 72 Fed. Reg. 15,885, 15,886  (Apr. 3, 2007), attached as Exhibit 2 to RJN.

*Covert v. Stryker Corp.*, No. 1:08CV447, 2009 WL 2424559, at *1 n.2 (M.D.N.C. Aug. 5, 2009) ("[T]he Court may take judicial notice of and consider the public records of the FDA…without transforming this motion [] into a motion for summary judgment.") (citations omitted); *Norton v. Independence Tech.*, No. 2:10-CV-03218-MCE, 2011 WL 3584491, at *1, n.1 (E.D. Cal. Aug. 15, 2011) (taking judicial notice of FDA documents as matters of public record, which does not convert the motion into one for summary judgment).

### B.   Federal Law Bars Plaintiff's Claims

#### 1.   The Medical Device Amendments to the Food, Drug and Cosmetic Act Preempt Additional or Different State Law Requirements Related to the Safety or Effectiveness of a Federally Approved Medical Device

The Supremacy Clause of the United States Constitution states that the "Laws of the United States . . . shall be the supreme Law of the Land."  U.S. Const., art. VI, cl. 2. Because federal law is supreme, any "state law that conflicts with federal law is 'without effect.'"  *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992).

##### (a)   Medical Device Amendments of 1976

Congress gave the FDA exclusive regulatory authority over medical devices when it amended the Food, Drug and Cosmetic Act by enacting the Medical Device Amendments of 1976 ("MDA").  21 U.S.C. §§ 301 *et seq.*  By establishing a regulatory regime for the oversight of medical devices, the amendments were expected "to provide for the safety and effectiveness of medical devices intended for human use." *Lohr*, 518 U.S. at 474 (citing the preamble to the MDA, 90 Stat. 539) (internal quotations omitted).

The MDA establishes three classes of medical devices based on the level of oversight required to ensure their safety: Class I, Class II, and Class III.  *Riegel*, 552 U.S. at 316; 21 U.S.C. § 360c(a)(1).  Of the three classes, a Class III device receives the most federal oversight, and requires premarket approval by the FDA.  *Id.*; *see also Buckman*, 531 U.S. at 344 (identifying Class III devices as "incur[ring] the FDA's

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

1    strictest regulation").  Generally, a device receives a Class III assignment if it cannot be

2    established that a less stringent classification would "provide reasonable assurance of

3    safety and effectiveness, and the device is 'purported or represented to be for a use in

4    supporting or sustaining human life or for a use which is of substantial importance in

5    preventing impairment of human health,' or 'presents a potential unreasonable risk of

6    illness or injury.'" *Riegel*, 552 U.S. at 316 (quoting 21 U.S.C. § 360c(a)(1)(C)(ii)).

7    Premarket approval of a Class III device is a "rigorous process" that requires an

8    applicant to submit "full reports of all studies and investigations relating to the device's

9    safety or effectiveness; a 'full statement of the components, ingredients, and properties

10   . . . '; a full description of the manufacturing methods and the facilities and controls

11   used for the device's manufacturing; [and] examples of the proposed labeling." *Riegel*,

12   552 U.S. at 317–18.

13           The FDA spends an "average of 1,200 hours" on each premarket approval

14   application.  *Id.* (quoting *Lohr*, 518 U.S. at 477).   In determining whether to grant

15   premarket approval of a Class III device, the FDA must, among other things, "weigh[]

16   any probable benefit to health from the use of [a] device against any probable risk of

17   injury or illness from such use."  21 U.S.C. § 360c(a)(2)(C)).   The FDA will also "rely

18   on the conditions of use included in the proposed labeling as the basis for determining

19   whether or not there is a reasonable assurance of [the device's] safety and

20   effectiveness."  21 U.S.C. § 360e(d)(1)(A).   The FDA may condition its grant of

21   premarket approval upon certain requirements. 21 U.S.C. §§ 360e(d), 360j(e)(1).  Once

22   premarket approval has been granted, "the MDA forbids the manufacturer to make,

23   without FDA permission, changes in design specifications, manufacturing processes,

24   labeling, or any other attribute, that would affect safety or effectiveness." *Riegel*, 552

25   U.S. at 319 (citing 21 U.S.C. § 360e(d)(6)(A)(i)). Moreover, approved devices are also

26   subject to ongoing reporting requirements related to the device's health and safety.  *Id.*

27   A manufacturer must inform the FDA of studies and investigations of its devices, as

28

7

well as incidents where the device caused or could have caused serious injury and the FDA retains the authority to withdraw approval based on this information.  *Id.*

Importantly, to ensure FDA oversight is not controverted by state regulatory measures, the MDA contains an express preemption provision which states in relevant part: "[N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—[¶] (1) which is different from, or in addition to, any requirement applicable under this Act to the device, and [¶] (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter."  21 U.S.C. § 360k(a).

<p style="text-align:center">(b)    Medical Device Preemption Under *Riegel*</p>

In *Riegel*, the United States Supreme Court considered whether the MDA's preemption provision barred common law claims that challenged the safety and effectiveness of Class III medical devices which received approval through the PMA process.  552 U.S. at 320.  At issue was a catheter marketed by Medtronic—a Class III device that had received premarket approval from the FDA.  *Id.*  The plaintiffs alleged the catheter was "designed, labeled, and manufactured in a manner that violated" state common law, and that these defects caused severe injuries.  *Id.*  They brought claims for "strict liability; breach of implied warranty; and negligence in the design, testing, inspection, distribution, labeling, marketing, and sale of the catheter."  *Id.*

The *Riegel* court unequivocally construed the MDA's express preemption provision to preempt the plaintiffs' state law claims against the PMA-approved catheter.  In so doing, the court established a two-step inquiry for determining whether state law claims are preempted by the MDA.   First, the court "must determine whether the Federal Government has established requirements applicable to" the medical device at issue.  *Id.* at 321.  Second, if there are applicable federal requirements, the court must then determine whether the "common-law claims are based upon [state]

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

requirements with respect to the device that are 'different from, or in addition to' the federal ones, and that relate to safety and effectiveness." *Id*. at 322.

As to the first part of the inquiry, *Riegel* held that the FDA's premarket approval imposes federal requirements because it is granted "only after [the FDA] determines that a device offers a reasonable assurance of safety and effectiveness" and because "the FDA requires a device that has received premarket approval to be made with almost no deviations from the specifications in its approval application." *Id*. at 323. In reaching this conclusion, the *Riegel* court expressly distinguished its prior holding in *Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996), where the court had held that substantial-equivalence review pursuant to 21 U.S.C. § 510(k) did not impose a device-specific federal "requirement." *Riegel*, 552 U.S. at 322. Given that substantial-equivalence review enables medical devices to be "marketed only so long as they remain substantial equivalents of the relevant pre-1976 devices," the court regarded the process as an exemption rather than a requirement. *Id*.; *Lohr*, at 493–94.

The *Riegel* court continued:

> Premarket approval, in contrast, imposes 'requirements' under the MDA as we interpreted it in *Lohr*. Unlike general labeling duties, premarket approval is specific to individual devices. And it is in no sense an exemption from federal safety review— it *is* federal safety review. Thus, the attributes that *Lohr* found lacking in § 510(k) review are present here. While § 510(k) is 'focused on equivalence, not safety,' premarket approval is focused on safety, not equivalence.... [T]he FDA may grant premarket approval only after it determines that a device offers a reasonable assurance of safety and effectiveness. And while the FDA does not 'require' that a device allowed to enter the market as a substantial equivalent 'take any particular form for any particular reason,' the FDA requires a device that has received premarket approval to be made with almost no deviations from the specifications in its approval application, for the reason that the FDA has determined that the approved form provides a reasonable assurance of safety and effectiveness.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

*Riegel*, 552 U.S. at 322–23 (internal citations omitted).

*Riegel* is consistent with federal authority construing the PMA process to impose a federal requirement for the purpose of preemption. *See Erickson v. Boston Scientific Corp.*, 846 F. Supp. 2d 1085, 1091 (C.D. Cal. Dec. 12, 2011) (recognizing that there is "no dispute" that federal requirements apply to the device at issue approved through the PMA process); *Walker v. Medtronic, Inc.*, 670 F.3d 569, 577 (4th Cir. 2011) ("[B]ecause [] Class III devices are required to undergo the premarket approval process, federal requirements exists with respect to [] Class III devices."); *Wolicki-Gables v. Arrow In'l, Inc.*, 634 F.3d 1296, 1301 (11th Cir. 2011) (holding that medical device's pre-market approval "imposes specific requirements on it that are sufficient to preempt a state law claim").

As to the second part of the preemption inquiry, *Riegel* found that common law tort duties impose "'requirement[s]' and would be pre-empted by federal requirements specific to a medical device." *Riegel*, 552 U.S. at 323–24. The Court reasoned that common law liability implies that the defendant had a legal duty and that "a liability award can be, indeed is designed to be, a potent method of governing conduct and controlling policy." *Id.* at 324. Rejecting the notion that a state-law "requirement" was limited to a state statute or regulation, the *Riegel* court reasoned that "[s]tate tort law that requires a manufacturer's [device] to be safer, but hence less effective, than the model the FDA has approved disrupts the federal scheme no less than state regulatory law to the same effect." *Rhynes v. Stryker Corp.*, No. 10-5619, 2011 WL 5117168, at *4 (N.D. Cal. Oct. 27, 2011) (quoting *Riegel*, 522 U.S. at 325); *see also Nimtz v. Cepin*, No. 08cv1294, 2011 WL 831182, at *4 (S.D. Cal. Mar. 3, 2011) ("[S]tates are not permitted to indirectly regulate the safety and effectiveness of an FDA approved medical device through the tort system."); *Grant v. Corin*, No. 3:15-CV-169-CAB-BLM, 2016 WL 4447523, at *3 (S.D. Cal. Jan. 16, 2016) (concluding "California 'requirements' include common law duties").

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

In *Riegel*, the United States Supreme Court concluded that both elements of its two–step inquiry were satisfied. Approval of a Class III medical device through the PMA process necessarily established "federal requirements." *Riegel*, 552 U.S. at 321–23. Further, "reference to a State's 'requirements' includes its common-law duties." *Id*. at 324. The court thus ruled that plaintiffs' state tort law claims against the PMA-approved catheter were preempted by the express preemption provision of the MDA. *Id*.

Following *Riegel*, "courts across the country have applied Section 360k(a) broadly, preempting all manner of claims from strict products liability and negligence . . . to breach of warranty . . . to failure to warn and manufacturing-and-design-defect claims. . . to negligence per se." *In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig. ("Medtronic Leads")*, 592 F. Supp. 2d 1147, 1152 (D. Minn. Jan. 5, 2009) (collecting cases). Likewise, California courts and the Ninth Circuit routinely apply § 360k(a) to dismiss cases against PMA-approved Class III medical devices based on preemption. *See Dunbar v. Medtronic, Inc.*, No. CV 14-01529-RGK(AJWx), 2014 WL 3056026 (C.D. Cal. June 25, 2014) (dismissing strict liability and design defect claims as expressly preempted).[4]

---

[4] *See also Anderson v. Medtronic*, No. 14-cv-00615-BAS(RBB), 2015 WL 2115342 (S.D. Cal. May 6, 2015) (dismissing strict liability, negligence, and negligence per se claims as expressly preempted); *Kashani-Matts v. Medtronic*, No. SACV 13-01161, 2013 WL 6147032 (C.D. Cal. Nov. 22, 2013) (granting motion to dismiss all plaintiff's claims as preempted); *Simmons v. Boston Scientific Corp.*, No. CV 12-7962, 2013 WL 1207421 (C.D. Cal. Mar. 25, 2013) (dismissing strict liability manufacturing, design and failure to warn claims dismissed as preempted); *Erickson*, 2011 WL 7036060 (granting judgment on the pleadings against all claims involving several pacemakers approved through PMA and PMA-equivalent processes); *Rhynes*, 2011 WL 5117168 (granting motion to dismiss as to all claims involving hip implant based on preemption); *Norton*, 2011 WL 3584491 (granting motion for judgment on the pleadings on preemption grounds against all claims in case involving PMA motorized stair-climbing wheelchair); *Nimtz*, 2011 WL 831182 (granting motion to dismiss on preemption grounds against all claims involving pacemaker approved via PMA); *Cohen v. Guidant Corp.*, No. CV-05-8070-R, 2011 WL 637472 (C.D. Cal. Feb. 15,

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

1

### (c)   Implied preemption under *Buckman*

2   *Riegel* established that a state claim may *only* proceed if it "provid[es] a damages

3   remedy for claims premised on a violation of FDA regulations" if "the state duties in

4   such a case parallel, rather than add to, federal requirements." *Riegel*, 552 U.S. at 330

5   (internal citations and quotations omitted).   However, claims premised *solely* on a

6   violation of MDA requirements are impliedly preempted under *Buckman*.   531 U.S. at

7   352–53.   A "parallel" state claim must "[rely] on traditional state tort law which has

8   predated the federal enactments in question."  *Id.* at 353. There is thus a "'narrow gap'

9   through which a state-law claim must fit to escape preemption by the FDCA: 'The

10   plaintiff must be suing for conduct that *violates* the FDCA (or else his claim is

11   expressly preempted by § 360k(a)), but the plaintiff must not be suing *because* the

12   conduct violates the FDCA (such a claim would be impliedly preempted under

13   *Buckman*).'" *Perez v. Nidek Co., Ltd.*, 711 F.3d 1109, 1120 (9th Cir. 2013) (quoting *In*

14   *re Medtronic, Inc., Sprint Fidelis Prods. Liab. Litig.,* 623 F.3d 1200, 1204 (8th Cir.

15   2010)) (emphasis in both). The FDA has authority to enforce the regulations and levy

16   penalties if it finds that a manufacturer has committed a violation; indeed, "[A]ll such

17   proceedings for the enforcement, or to restrain violations, of this chapter shall be by

18   and in the name of the United States." 21 U.S.C. § 337(a).  A private litigant cannot

19   sue a defendant for allegedly violating the FDCA.  "The FDCA leaves no doubt that it

20   is the Federal Government rather than private litigants who are authorized to file suit

21   for noncompliance with the medical device provisions . . . ." *Buckman*, 531 U.S. at 349

22   n.4; *see also Perez*, 711 F.3d at 1119 (finding plaintiffs fraud claim preempted because

23   it "exist[s] solely by virtue of the FDCA . . . requirements") (citations omitted).

24

25   2011) (granting motion to dismiss on preemption grounds for pacemaker approved

26   through PMA-equivalent process); *McGuan v. Endovascular Techs., Inc.*, 182 Cal.

27   App. 4th 974 (2010) (holding MDA preempted strict product liability, negligence,

28   breach of express warranty, breach of implied warranty, and consumer protection

     claims).

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

"Claims not tied to state law tort duties are essentially private actions to enforce the FDCA and are barred by [21 U.S.C. § 337(a)]." *Hawkins v. Medtronic, Inc.*, No. 1:13-CV-499 AWI SKO, 2014 WL 346622, at *4 (E.D. Cal. Jan. 30, 2014).   Moreover, claims may be subject to implied preemption under the MDA when it "seek[s] to enforce an exclusively federal requirement not grounded in traditional state tort law." *Kashani-Matts*, No. SACV 13-01161-CJC, 2014 WL 819392, at *2 (C.D. Cal. Feb. 14, 2014) (citing *Buckman*, 531 U.S. at 352–53).

### 2.     The FDA Has Mandated Specific Requirements for the Manufacture, Design, and Labeling of Mentor Silicone Breast Implants

The first step of the preemption inquiry is the determination as to "whether the Federal Government has established requirements applicable to" the medical device at issue—*i.e.*, to Mentor MemoryGel Silicone Breast Implants.   *Riegel*, 552 U.S. at 321. The Mentor MemoryGel Silicone Breast Implant at issue in this case is a Class III device.   The implant was approved by the FDA through the PMA process on May 10, 2000. *See* Ex. 1 to RJN, FDA PMA Approval Order, November 17, 2006. The Mentor MemoryGel Silicone Breast Implant at issue has been manufactured and marketed pursuant to a valid and current PMA, and such approval has never been revoked, suspended, or withdrawn.   *See Riegel*, 552 U.S. at 319–20 ("The FDA has the power to withdraw premarket approval based on newly reported data or existing information and must withdraw approval if it determines that a device is unsafe or ineffective under the conditions in its labeling.").

The FDA approved specifications relative to the design, manufacture and labeling of the Mentor breast implants at issue are the only standard of care applicable thereto.   *Id.* at 325.   Therefore, any state-law products liability claims attempting to impose design, manufacture, or labeling requirements different from, or in addition to, those approved as safe and effective by the FDA are preempted by the Medical Device

Amendments, 21 U.S.C. §§ 360 *et seq.*, to the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.*

### 3. Plaintiff's Strict Liability Claims (Counts 1 & 2) Conflict with the FDA Requirements for the Manufacture, Labeling, and Alteration of Mentor MemoryGel Silicone Breast Implants and Are Therefore Preempted

The second step of the preemption inquiry is the determination of whether Plaintiff's state law claims rely on any requirement of California law applicable to Mentor MemoryGel Silicone Breast Implants "that is 'different from, or in addition to' federal requirements and that 'relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device.'" *Riegel*, 552 U.S. at 323 (quoting 21 U.S.C. § 360k(a)).  The MDA expressly preempts any state law claim that would impose different or additional duties relating to any requirement imposed through the PMA process. *Id.* at 327–28; *Erickson*, 2011 WL 7036060, at *4. Like the plaintiffs in *Riegel*, by alleging state law tort claims, Plaintiff is, in effect, attempting to impose manufacturing and warning requirements upon the Mentor MemoryGel Silicone Breast Implant which conflict with, or add a greater burden to, the specific federal requirements imposed by the FDA when it was granted premarket approval.

Plaintiff's threadbare and conclusory claims against Mentor for strict liability failure to warn (Count 1) and strict liability manufacturing defect (Count 2) challenge the safety and effectiveness of the PMA-approved Mentor MemoryGel Silicone Breast Implants. *See* Compl. ¶¶ 63–85.  Each claim is identical to those found to be preempted by *Riegel* and its progeny.

The first cause of action, which asserts strict liability failure to warn, is preempted under *Riegel*.  In support of her claim, Plaintiff makes the conclusory allegation that the MemoryGel Silicone Breast Implants were "defective and unreasonably dangerous . . . in that they contained warnings insufficient to alert

consumers, including Plaintiff, of the dangerous risks and complications associated with the [product] . . . ."[5] Compl. ¶ 70. Plaintiff does not allege that the labeling of her MemoryGel Silicone Breast Implant deviated from the FDA-approved labeling. She nonetheless seeks to impose labeling requirements that go beyond what federal law requires. The MDA's express preemption provision precludes such claims as they would impose different or additional duties relating to the requirements imposed by the FDA when it granted premarket approval. *See Riegel*, 552 U.S. at 327–28; *Houston v. Medtronic*, 957 F. Supp. 2d 1166, 1177 (C.D. Cal. 2013) ("Plaintiff aims to foist upon Defendants labeling or warning requirements 'in addition to' what federal law requires. Therefore, the claim is expressly preempted.").

The second cause of action asserts a strict liability manufacturing defect claim in which Plaintiff maintains that the MemoryGel Silicone Breast Implants "contained a manufacturing defect which Defendants did not intend and the FDA did not allow." Compl. ¶ 79. Plaintiff does not allege that Mentor deviated from any *specific* manufacturing requirement imposed by the FDA through the PMA process, but instead relies on allegations that Mentor purportedly violated vague and generic Current Good Manufacturing Practices ("cGMPs"). *See id.* ¶ 78. As explained in Part II.B.4.a, such a claim is unacceptably vague and insufficient to survive express preemption.

The reasoning behind dismissal of each of plaintiff's claims is in line with *Riegel* and its progeny. Each claim would require "judges and juries to second-guess the balancing of benefits and risk of a specific device to their intended patient population—the central role of the FDA. . .." *Horn v. Thoratec Corp.*, 376 F.3d 163, 178 (3d Cir. 2004) (quoting the FDA's Amicus Curiae Letter Brief at 25–26). *Riegel* explicitly held that state law tort claims, including causes of action for strict liability

---

[5] Plaintiff *cannot* premise her claim on a failure to warn her directly about that purported risk. *See* Compl. ¶¶ 69–70. Under the learned intermediary doctrine, a medical device manufacturer's duty is to warn the prescribing physician, *not* the patient. *See, e.g.*, *Motus v. Pfizer Inc.*, 358 F.3d 659, 661 (9th Cir. 2004).

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

and negligence, impose requirements that are different from, or in addition to, the device-specific federal requirements, and are thus preempted. *Riegel,* 552 U.S. at 324; *see also Walker*, 670 F.3d at 580 ("A common law tort claim that presupposes a Class III device should have been designed in a manner other than that contemplated by its premarket approval is therefore expressly preempted by the MDA as interpreted by *Riegel*." (citing *Riegel*, 522 U.S. at 324–25)).

The same reasoning applies here.  Mentor MemoryGel Silicone Breast Implants received premarket approval by the FDA on November 17, 2006.  *See* Exhibit 1 to RJN.  Plaintiff's strict liability claims are devoid of any plausible allegations that the Mentor MemoryGel Silicone Breast Implants at issue in this case were not manufactured and labeled in accordance with the specifications approved by the FDA through the PMA process.  By contending that the Mentor breast implants were, nevertheless, defective, Plaintiff seeks to impose requirements regarding the design, manufacture, marketing or labeling of the Mentor breast implants that are different from, or in addition to, what the FDA approved.  Plaintiff has therefore failed to allege facts sufficient "to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S at 547.

Consequently, Plaintiff's strict liability claims (Counts 1 & 2) fall squarely within the MDA's express preemption provision and in accordance with *Riegel* and its progeny, Plaintiff's claims should be dismissed.

### 4.      Plaintiff Has Not Pled a Plausible Parallel claim That Survives Express and Implied Preemption.

Even if Plaintiff's strict liability claims escape express preemption—which they do not—they still fail to assert a viable parallel claim. In addition, Plaintiff's negligence per se claim is impliedly preempted as an impermissible attempt to enforce federal regulations.  As noted above, "express preemption and implied preemption leave only a 'narrow gap' through which the plaintiff's claims must fit in order to survive." *Perez*, 711 F.3d at 1120.  Moreover, a plaintiff "cannot simply incant the

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

magic words '[defendant] violated FDA regulations' in order to avoid preemption." *Simmons*, 2013 WL 1207421, at *4 (quoting *Wolicki-Gables,* 634 F.3d at 1301).

### (a)    Plaintiff fails to plead a parallel manufacturing defect claim

Plaintiff's manufacturing defect claim, which relies on vague and unspecified cGMPs, does not support a parallel claim that survives express preemption. "CGMPs are guidelines that do not create a federal requirement, and a claim based on alleged failure to comply with the guidelines fails to plead violation of a federal requirement." *Pearsall v. Medtronics, Inc.*, 147 F. Supp. 3d 188, 198 (E.D.N.Y. 2015). A claim mandating "compliance with such 'vague' standards effectively imposes "different, or additional" requirements, and is preempted by § 306." *Ilarraza v. Medtronic, Inc.*, 677 F. Supp. 2d 582, 588 (E.D.N.Y. 2009); *Medtronic Leads*, 592 F. Supp. 2d at 1157–58. (noting that, since CGMPs are "simply too generic, standing alone, to serve as the basis for Plaintiff's manufacturing-defect claim[,]" to hold Medtronic liable for conduct, in "the absence of a specific requirement in the CGMPs. . . would impose requirements 'different from, or in addition to' those under federal law" (citations omitted)).

### (b)    Plaintiff's negligence per se claim is impliedly preempted.

Additionally, Plaintiff has not pled a valid parallel negligence per se claim because her claim is predicated exclusively on Mentor's alleged violation of federal requirements pursuant to the FDCA.  Courts in California have held that a cause of action for negligence per se based on a violation of the FDCA exists "because of federal law and [is] therefore preempted." *Anderson*, 2015 WL 2115342, at *8–9 (finding negligence per se action premised on violation of applicable federal statutes and regulations relating to medical devices was impliedly preempted under *Buckman* because they existed "because of federal law"); *Grant*, 2016 WL 444752, at *4 dismissing negligence per se claim as impliedly preempted because the statutes

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco


forming the claim were FDA-imposed regulations); *Dunbar*, 2014 WL 3056026, at *5–6 (dismissing negligence per se claim as impliedly preempted under *Buckman*).

As the basis for her negligence per se claim, Plaintiff alleges that Mentor breached "regulations and testing requirements imposed by the granting of the PMA by the FDA for MemoryGel Silicone Gel Breast Implants, including the requirement that follow-through studies be conducted." Compl. ¶ 89. However, Plaintiff fails to point to any *state-law claim* that parallels those alleged federal requirements. *See Wolicki-Gables*, 634 F.3d at 1300 (to state a parallel claim that avoids preemption, a claim must be based on a state law duty that is "genuinely equivalent" to the federal requirement.). In fact, there is no state-law claim requirement that a manufacturer conduct "follow-through studies."   The adjudication of Plaintiff's claim thus relies solely on the existence of federal requirements and is impliedly preempted.   Plaintiff may not supplant the exclusive enforcement authority of the FDA by suing for alleged violations of the FDCA. Her negligence per se claim (Count 3) is therefore impliedly preempted and should be dismissed.[6]

### 5. Plaintiff Has Not Alleged Causal Nexus Between the Alleged Violations and Her Injuries.

Plaintiff's attempt to plead a parallel claim also fails because she has not plausibly alleged that any purported violations of federal requirements caused her specific injury.  To properly plead parallel claims that survive preemption, a plaintiff must allege (1) the violation of a specific federal requirement applicable to the device; (2) the violation of an identical state-law duty; and (3) that the predicate federal violation caused his or her injuries." *Millman v. Medtronic*, No. 14-cv-1465, 2015 WL 778779, at *4 n.2 (D.N.J. Feb. 24, 2015).

---

[6] To the extent Plaintiff's strict liability failure-to-warn claim (Count 1) is based on similar alleged violations of the FDCA, that claim is impliedly preempted as well.

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

Here, Plaintiff fails to draw the necessary causal link between the alleged federal violations and her injuries. Specifically, Plaintiff has alleged no facts suggesting how the progress of Mentor's post-approval studies caused her injuries; "she merely alleges the conclusion of causation itself." *Frere v. Medtronic*, No. EDCV 15-02338-BRO(DTBx), 2016 WL 1533524, at *6 (C.D. Cal. Apr. 6, 2016). Plaintiff makes the speculative and unsupported assertion that "of the patients who were accounted for, significant numbers reported systemic ailments *which can only be attributed to gel bleed*." Compl. ¶ 51 (emphasis added). She has articulated no facts, however, to support her bald conclusion that additional information from patients in post-approval studies would reveal an issue with "gel bleed" or would result in the FDA requiring different labeling. Further, as Plaintiff herself highlights by citing to the FDA's website regarding Mentor's post-approval studies, the FDA is already aware of the status of each post-approval study, but has not required Mentor to take any action or alter the warnings already in place.

### 6. Numerous Courts Have Held State Law Claims Related to Breast Implants Are Preempted

Numerous courts – both before and after *Riegel* – have for years held that state law claims related to PMA-approved breast implants are preempted. *See, e.g.*, *Malonzo v. Mentor Worldwide, LLC*, No. C 14-01144, 2014 WL 2212235 (N.D. Cal. May 28, 2014) (dismissing product liability claims against Mentor as expressly preempted); *Ford v. Mentor Worldwide, LLC,* No. 2:13-cv-06317 (E.D. La. Dec. 17, 2013) (granting Mentor's motion to dismiss all of plaintiff's product liability claims regarding saline breast implants as preempted under *Riegel*) (order attached as Exhibit A to Benedict Decl. ¶ 3); *Harris v. Mentor Worldwide LLC*, No. 12-cv-916 (E.D. Cal. Aug. 21, 2012) (following *Riegel* and dismissing plaintiff's product liability claims regarding saline breast implants against Mentor as preempted) (minute order attached as Exhibit B to Benedict Decl. ¶ 4); *Couvillier v. Allergan Inc.*, No. 10-1383, 2011 WL

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

8879258, at *1–2 (W.D. La. Jan. 20, 2011) (following *Riegel* and dismissing plaintiff's product liability claims regarding silicone gel-filled breast implants as preempted); *Williams v. Allergan USA, Inc.*, No. CV-09-1160, 2009 WL 3294873, at *2–3 (D. Ariz. Oct. 14, 2009) (following *Riegel* and granting breast implant manufacturer's motion for summary judgment because plaintiff's product liability and negligence claims related to a ruptured silicone implant were preempted); *Dorsey v. Allergan, Inc.*, No. 08-0731, 2009 WL 703290, at *1–6 (M.D. Tenn. Mar. 11, 2009) (following *Riegel* and granting breast implant manufacturer's motion for summary judgment on preemption in case involving silicone gel breast implants); *Herbert v. Mentor*, No. 04-413, 2007 WL 2893387, at *3–4 (D.N.J. Sept. 28, 2007) (granting Mentor's motion for summary judgment on preemption in case involving saline breast implants); *Cottengim v. Mentor Corp.*, No. 05-161, 2007 WL 2782885, at *2–5 (E.D. Ky. Sept. 24, 2007) (granting Mentor's motion for summary judgment on preemption in case involving saline breast implants); *Alfred v. Mentor Corp.*, No. 05-483, 2007 WL 708631, at *2–7 (W.D. Ky. Mar. 5, 2007) (granting Mentor's motion for summary judgment on preemption and other grounds in case involving saline breast implants); *Haddock v. Mentor Tex.*, No. 03-cv-2311, 2005 WL 3542563, at *4 (N.D. Tex. Mar. 25, 2005) (granting Mentor's motion for summary judgment on preemption in case involving saline breast implants).

## C.   Plaintiff's Negligence Per Se Claim is Not Cognizable.

In addition to being preempted, Plaintiff's negligence per se claim also fails because California does not recognize a separate cause of action for negligence per se. *See Grant*, No. 3:15-CV-169-CAB-BLM, 2016 WL 4447523, at *4 ("in California, negligence per se is not actually an independent cause of action"); *People v. Kinder Morgan Energy Partners, L.P.*, 569 F. Supp. 2d 1073, 1087 (S.D. Cal. 2008) (dismissing negligence per se claim because "negligence *per se* is merely an evidentiary doctrine and not an independent cause of action"); *Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1285–86 (2006) ("[T]o apply negligence per se is not to

20

state an independent cause of action.  The doctrine does not provide a private right of action for violation of the statute. . . . [T]he doctrine of negligence per se did not furnish appellant with an independent claim." (internal citations omitted)).  Thus, the Court should dismiss Count 3 of Plaintiff's Complaint.[7]

## III.   <u>CONCLUSION</u>

Based on the above, Defendant Mentor Worldwide LLC respectfully requests that the Court enter an order granting Defendant's Rule 12(b)(6) Motion to Dismiss and dismiss Plaintiff's action, with prejudice, in its entirety.


DATED:  November 23, 2016                 TUCKER ELLIS LLP

By: <u>/s/Mollie F. Benedict</u>
       Mollie F. Benedict
       Attorneys for Defendant Mentor
       Worldwide LLC

---

[7] Further, Plaintiff has not sufficiently alleged what specific statutory or regulatory provisions Mentor supposedly violated.  Instead, she merely alleges that Mentor violated unspecified provisions of various statutes and regulations, including 21 C.F.R. §§ 820, *et seq*.  *See* Compl. ¶ 88.  These statutes and regulations concern the FDCA and contain numerous subsections.  Without specifying what provisions Defendants supposedly violated, Plaintiff cannot invoke the negligence per se doctrine.  *See, e.g.*, *Bridgeman v. United States*, No. 2:10-cv-01457 JAM KJN PS, 2011 WL 221639, at *15 (E.D. Cal. Jan. 21, 2011) (Defendants "should not be left to guess about the nature of the statutory duties purportedly owed and violated by them in regards to plaintiff. Without more, plaintiff's negligence per se claims that rely on these statutes fail."); *Batchelor v. Pfizer, Inc.*, 2013 WL 3873242, at *3 (M.D. Ala. July 25, 2013) (striking negligence per se claim where plaintiff merely alleged that defendant violated the FDCA "but [did] not identify the provision [d]efendant allegedly violated or say what constituted the violation").

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

## CERTIFICATE OF SERVICE

I, Estella Licon, declare that I am a citizen of the United States and a resident of Los Angeles, California or employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action.  My business address is Tucker Ellis LLP, 515 South Flower Street, Forty-Second Floor, Los Angeles, California 90071-2223.

On **November 23, 2016**, I served the following:

1. **DEFENDANT MENTOR WORLDWIDE LLC'S NOTICE OF MOTION AND RULE 12(b)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

2. **DECLARATION OF MOLLIE F. BENEDICT IN SUPPORT OF DEFENDANT MENTOR WORLDWIDE LLC'S RULE 12(b)(6) MOTION TO DISMISS**

3. **[PROPOSED] ORDER GRANTING  MENTOR WORLDWIDE LLC'S RULE 12(b)(6) MOTION TO DISMISS**

on the interested parties in this action by:

(X)   **ELECTRONICALLY VIA ECF:**  the above-entitled document to be served electronically through the United States District Court, Southern District ECF website, addressed to all parties appearing on the Court's ECF service list.  A copy of the "Filing Receipt" page will be maintained with the original document in our office.

(X)   I declare that I am employed in the office of the Bar of this Court at whose direction the service was made.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on **November 23, 2016**, at Los Angeles, California.

Estella Licon

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

2922003.1