UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 16-7316-DMG (KSx)** | Date | September 15, 2017 |
| Title | *Sarah Ebrahimi v. Mentor Worldwide LLC, et al.* | Page | 1 of 10 |

Present: The Honorable    DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS - ORDER RE DEFENDANT'S MOTION TO DISMISS [15]**

Plaintiff Sara Ebrahimi's Complaint alleges the following claims against Defendants Mentor Worldwide LLC ("Mentor") and Johnson & Johnson Services, Inc. ("Johnson & Johnson") relating to silicon gel breast implants: (1) strict product liability – failure to warn; (2) strict product liability – manufacturing defect; and (3) negligence per se. ("Compl.") [Doc. #1]. Ebrahimi subsequently dismissed all claims against Johnson & Johnson with prejudice. [Doc. # 11.]

Mentor now moves to dismiss Ebrahimi's Complaint in its entirety. [Doc. # 15.] For the following reasons, the Court **GRANTS** Mentor's motion to dismiss.

**I.
REQUEST FOR JUDICIAL NOTICE**

Federal Rule of Evidence 201 permits a court to take judicial notice of facts not subject to reasonable dispute and "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Campbell v. PricewaterhouseCoopers, LLP*, 642 F.3d 820, 824, n.3 (9th Cir. 2011) (citing Fed. R. Evid. 201(b)). "A court may take judicial notice of 'matters of public record.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (internal citation omitted). Defendant has submitted a request for judicial notice of the following documents in support of its motion:

- Exhibit 1: November 17, 2006 Premarket Approval ("PMA") from the Center for Devices and Radiological Health of the Food and Drug Administration ("FDA"), granting PMA to Mentor for Mentor Saline-Filled Mammary Prostheses.

- Exhibit 2: Federal Register/Vol. 72, No. 63, April 3, 2007 Notices, TABLE 1: List of Safety and Effectiveness Summaries for Approved PMAs Made Available

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 16-7316-DMG (KSx)** | Date | September 15, 2017 |
| Title | *Sarah Ebrahimi v. Mentor Worldwide LLC, et al.* | Page | 2 of 10 |

from October 1, 2006 to December 31, 2006, which identifies the FDA's November 17, 2006 PMA approval of Mentor MemoryGel™ Silicone Gel-Filled Breast Implants ("the Device").

RJN, Exs. 1 ("PMA Approval Order")[1] and 2 ("72 Fed. Reg. 15886–87 (Apr. 3, 2007)") [Doc. # 16.]  Ebrahimi does not oppose Mentor's request for judicial notice.

Because above documents are matters of public record whose contents are not reasonably in dispute, the Court **GRANTS** Mentor's request for judicial notice.

## II.
## FACTUAL BACKGROUND[2]

**A.    The Subject Device**

Mentor develops, manufactures, markets, and distributes a device known as Mentor MemoryGel Silicone Gel Breast Implants ("the Implants").  Compl. ¶ 2.  The Device is a Class III medical device under the Federal, Food, Drug, and Cosmetic Act of 1938.  21 U.S.C. section 301 *et seq.* ("FDCA"), as amended by the Medical Device Amendments of 1976, 21 U.S.C. section 360 *et seq.* ("MDA").  Compl. ¶¶ 3, 15.  Class III devices like the Implants require premarket approval from the FDA before sale in the United States.  *Id.* ¶¶ 4, 15.

On November 17, 2006, the FDA approved the Implants for breast augmentation and breast reconstruction and authorized Mentor to begin commercial distribution of the Implants, subject to certain post-approval requirements and conditions.  *Id.* ¶ 6; PMA Approval Order at 1; 72 Fed. Reg. 15886–87 (Apr. 3, 2007).  These conditions of approval include six post-approval studies to further assess the safety and effectiveness of the Implants:  (1) Core Post-Approval Study; (2) Large Post-Approval Study; (3) Device Failure Study; (4) focus group studies; (5) annual physician informed decision survey; and (6) adjunct study.  Compl. ¶ 6; PMA Approval Order at 2–4.  Failure to comply with these post-approval requirements could result in the FDA's withdrawing its premarket approval.  *See* 21 C.F.R. § 814.82(9)(c).  Nothing in the Complaint alleges that the FDA has withdrawn its premarket approval of the Implants.

---

[1] The PMA Approval Order was also attached to Ebrahimi's Complaint as Exhibit 1.

[2] The Court accepts all material facts alleged in the Complaint as true solely for the purpose of deciding the motion to dismiss.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 16-7316-DMG (KSx)** | Date | September 15, 2017 |
| Title | *Sarah Ebrahimi v. Mentor Worldwide LLC, et al.* | Page | 3 of 10 |

**B.     Ebrahimi's Surgery and Subsequent Injuries**

In 2013, Ebrahimi discussed getting breast augmentation with a plastic surgeon in Encino, California. Compl. ¶ 17. She reviewed a Mentor brochure regarding "Important Information for AUGMENTATION PATIENTS about Mentor MemoryGel Silicone Gel-Filled Breast Implants" before consenting to the surgery. *Id.*, Ex. 2 (Brochure).

In June 2013, shortly after undergoing Bilateral Silicone Breast Augmentation and being implanted with Mentor MemoryGel Silicone Gel Breast Implants, Ebrahimi developed pain in both breasts along with persistent mild hardening. *Id.* ¶ 20. On July 2, 2013, Ebrahimi developed an enlarged lymph node. *Id.* By August 2013, Ebrahimi experienced severe pain in her left breast accompanied by lateral malposition. *Id.* She also experienced chest pain, pressure in her ribs, fatigue, increased pain in her lymph nodes, and weakness. *Id.*

On October 2, 2013, Ebrahimi underwent revision surgery on her left breast due to lateral malposition. *Id.* ¶ 21. By 2014, she continued to experience further health issues including lateral malposition of the right breast, cognitive difficulties, and immune dysfunction. *Id.* ¶ 22. Ebrahimi's symptoms continued to worsen over the next two years. *Id.* ¶¶ 23–25. In May 2016, blood tests revealed abnormalities indicating a "systemic toxicity due to her body's reaction to toxic elements contained within the gel of the implants." *Id.* ¶ 25. In July 2016, Ebrahimi was diagnosed with silicone toxicity, and her doctor advised her to have the implants removed immediately. *Id.* ¶ 26.

**C.     Failure to Warn Patients and Doctors**

Ebrahimi alleges that Mentor intentionally and systemically failed to follow FDA requirements with respect to the six post-approval studies designed "to support long-term safety." *Id.* ¶ 51. Moreover, she alleges that "Mentor was aware, or should have been aware that the gel [in the Implants] contained chemicals and metals toxic to the human body but failed to adequately report that to the FDA and warn their patients of their dangerous consequences." *Id.* Despite knowing about the risks associated with the Implants, Mentor allegedly "covered them up by terminating studies, sponsoring only self-serving research they could control, and by misrepresenting the risks to the users, physicians, and regulatory agencies." *Id.* ¶ 52. Specifically Mentor "failed to warn consumers, healthcare providers, and the FDA" about the Device's risk of "significant gel bleed," which could introduce toxins into the body. *Id.* ¶¶ 51, 56.

Case 2:16-cv-07316-DMG-KS   Document 23   Filed 09/15/17   Page 4 of 10   Page ID #:243

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 16-7316-DMG (KSx)** | Date | September 15, 2017 |
|---|---|---|---|

| Title | *Sarah Ebrahimi v. Mentor Worldwide LLC, et al.* | Page | 4 of 10 |
|---|---|---|---|

# III.
# LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may seek to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a pleading need not contain "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating the sufficiency of a complaint, courts must accept all factual allegations as true. *Id.* (citing *Twombly*, 550 U.S. at 555). Legal conclusions, in contrast, are not entitled to the assumption of truth. *Id.*

Should a court dismiss certain claims, "[l]eave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts.'" *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*en banc*)).

# IV.
# DISCUSSION

Mentor argues that Ebrahimi's state law claims are expressly preempted by the MDA, 21 U.S.C. section 360k(a), or impliedly preempted by 21 U.S.C. section 337(a). Mentor further contends that Ebrahimi's strict liability claims fail because she has not sufficiently alleged a causal nexus between her injuries and Mentor's alleged violations.

**A.      Standard for Preemption Under the Medical Device Amendments of the FDCA**

The MDA "imposed a regime of detailed federal oversight" over the entry of medical devices. *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 316 (2008). Under a "rigorous" process of premarket approval, a Class III device manufacturer was required to submit detailed studies demonstrating the device's safety and effectiveness. *Id.* at 316–318. This "premarket approval process includes review of the device's proposed labeling. The FDA evaluates safety and effectiveness under the conditions of use set forth on the label, § 360c(a)(2)(B), and must

Case 2:16-cv-07316-DMG-KS Document 23 Filed 09/15/17 Page 5 of 10 Page ID #:244

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 16-7316-DMG (KSx) | Date | September 15, 2017 |
|---|---|---|---|

| Title | *Sarah Ebrahimi v. Mentor Worldwide LLC, et al.* | Page | 5 of 10 |
|---|---|---|---|

determine that the proposed labeling is neither false nor misleading, § 360e(d)(1)(A)." *Id.* at 318.

After completing the process, the FDA either grants or denies premarket approval. 21 U.S.C. § 360e(d). "Once a device has received premarket approval, the MDA forbids the manufacturer to make, without FDA permission, changes in design specifications, manufacturing processes, labeling, or any other attribute, that would affect safety or effectiveness." *Riegel*, 552 U.S. at 319 (citing § 360e(d)(6)(A)(i)).

### 1. Express Preemption

In order to determine whether the MDA expressly preempts a state law claim under section 360k(a), a court must evaluate two factors: (1) whether the FDA has established "requirements" that apply to the medical device at issue; and, if so, (2) whether the state law claims would impose requirements "'different from, or in addition to,' the federal ones, and that relate to safety and effectiveness. § 360k(a)." *Riegel*, 552 U.S. at 322.

Section 360k "does not prevent a state from providing a damages remedy for claims premised on a violation of FDA regulations; the state duties in such a case 'parallel,' rather than add to, federal requirements." *Id.* at 330; *see also Stengel v. Medtronic, Inc.*, 704 F.3d 1224, 1228 (9th Cir. 2013) (*en banc*) ("[T]he MDA does not preempt a state-law claim for violating a state-law duty that parallels a federal-law duty under the MDA."). "To properly plead parallel claims that survive preemption, a plaintiff must allege facts (1) showing an alleged violation of FDA regulations or requirements related to [the device], and (2) establishing a causal nexus between the alleged injury and the violation." *Erickson v. Boston Sci. Corp.*, 846 F. Supp. 2d 1085, 1092 (C.D. Cal. 2011) (internal quotation marks and citation omitted).

### 2. Implied Preemption

Under the MDA, all actions to enforce FDA requirements "shall be by and in the name of the United States." 21 U.S.C. § 337(a). Thus, "the Federal Government rather than private litigants . . . are authorized to file suit for noncompliance with the medical device provisions." *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001). The Supreme Court in *Buckman* held that a state law fraud claim based on misrepresentations defendants made to the FDA during the PMA process was "impliedly preempted because it sought to enforce an exclusively federal requirement and was not grounded in traditional state tort law." *Stengel*, 704 F.3d at 1235.

Case 2:16-cv-07316-DMG-KS   Document 23   Filed 09/15/17   Page 6 of 10   Page ID #:245

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 16-7316-DMG (KSx)** | Date | September 15, 2017 |
|---|---|---|---|
| Title | *Sarah Ebrahimi v. Mentor Worldwide LLC, et al.* | Page | 6 of 10 |

State law claims based on conduct that violates the FDCA, however, can evade implied preemption if the alleged wrongdoing "would give rise to liability under state law even if the FDCA had never been enacted." *Riley v. Cordis Corp.*, 625 F. Supp. 2d 769, 777 (D. Minn. 2009); *see also Eidson v. Medtronic, Inc.*, 981 F. Supp. 2d 868, 881 (N.D. Cal. 2013) ("a state law cause of action escapes implied preemption if it would state a claim under state law even in the absence of the FDCA") (citations omitted).

**B.     Ebrahimi's Claims**

   **1.     Strict Product Liability – Failure to Warn**

In her Complaint, Ebrahimi alleges that Mentor "had a duty to warn Plaintiffs of the dangers associated with the [Implants]." Compl. ¶ 70. She alleges that the "defective" Implants "contained *warnings insufficient to alert consumers*, including Plaintiffs, of the dangerous risks and complications associated with [the Implants], including but not limited to, their propensity to cause injury, through leakage of the silicone gel into the tissues of the user's body," which could result in deleterious side effects and compromise the user's health. *See id.* (emphasis added). Additionally, Ebrahimi alleges that "in failing to provide follow-through studies required by the granting of the PMA to market and sell their product, [Mentor] failed to warn the FDA of the risks described above." *Id.* ¶ 72. Although not alleged in the "Failure to Warn" cause-of-action, Ebrahimi alleges elsewhere in the Complaint that Mentor also failed to warn healthcare providers and doctors of the Device's potential risks. *Id.* ¶¶ 52–53, 56.

The Complaint fails to fully flesh out its theory of liability for the failure-to-warn claim. Nonetheless, based on what it can gather from the above allegations, the Court analyzes the following two potential theories: (1) a claim based on Mentor's failure to report to the FDA "adverse events" regarding certain dangers with the Implants' use[3], and (2) a claim based on Mentor's failure to issue sufficient warnings to consumers and doctors.

A parallel failure-to-warn claim based on a manufacturer's failure to report "adverse events" to the FDA may survive preemption. *See Stengel*, 704 F.3d at 1233 (no preemption where failure-to-warn claim under Arizona law was based on a failure to warn the FDA). The

---

[3] The term "adverse events" appears only once in the Complaint, during a discussion of the large post-approval study. Compl. ¶ 27. Yet, in her opposition Ebrahimi asserts that she "has alleged in her Complaint that Mentor *failed to report adverse events* from the six new or ongoing studies commissioned as part of implant's PMA approval, all of which would have led to reports suggesting the device's contribution to death or serious injury . . . ." Opp. at 10 (emphasis added) [Doc. # 18.]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 16-7316-DMG (KSx)** | Date | September 15, 2017 |
| Title | *Sarah Ebrahimi v. Mentor Worldwide LLC, et al.* | Page | 7 of 10 |

FDA requires that manufacturers of Class III devices report any information "reasonably suggest[ing]" that their device "[m]ay have caused or contributed to a death or serious injury" or "[h]as malfunctioned" in a way that "would be likely to cause or contribute to a death or serious injury, if the malfunction were to recur." *See* 21 C.F.R. § 803.50(a).

Here, Ebrahimi alleges that Mentor violated the PMA post-approval conditions due to a series of problems associated with the six studies, including having "sparse" data collection and having an "inadequate sample size," which led to "potential serious side effects and harmful complications [being] downplayed and under-reported. . . ." Compl. ¶ 50. Ebrahimi summarizes in her opposition the problems with each one of the six post-approval studies. *See* Opp. at 10. For instance, with regard to the Core Study, Ebrahimi asserts that it:

> showed a follow-up of only 59% reporting done only for six of the ten required years. . . . In the primary augmentation cohort, Mentor only reported the reasons for reoperation in 36% of the sample, with fully 47% of women in this cohort needing reoperation for which Mentor failed to document or explain the reasons.

*Id.* (citing Compl. ¶¶ 28–33). As for the Focus Group Study, Ebrahimi contends that it "used only 35 women in its study and subsequently ignored their recommendations for labeling changes." *Id.* (citing Compl. ¶¶ 41–44). According to Ebrahimi, "[t]hese results demonstrate a continual violation of the requirements issued by the FDA." *Id.*; *see also* Compl. ¶ 51 ("All six of these studies were supposed to support long-term safety. The poor follow-up rates and inadequate data confirm Mentor's intentional and systemic failure to follow FDA requirements.").

As an initial matter, the Court agrees with Mentor that Ebrahimi identifies no parallel state-law duty to conduct post-approval "follow-through studies." Thus, to the extent Ebrahimi bases her failure-to-warn claim on Mentor's failure to comply with the federal requirement to complete the six post-approval studies, the claim is impliedly preempted. *See Eidson*, 981 F. Supp. 2d at 881 ("a claim is impliedly preempted under *Buckman* if it is cognizable only by virtue of the provisions of the FDCA itself, and would not be independently viable under state law absent those provisions") (citing *Buckman*, 531 U.S. at 348).

Still, Ebrahimi does argue in her opposition that "[b]ecause of poor follow-up or obfuscation of the data, information was not given to the FDA that would have disclosed the product's *propensity to cause serious injury to the ultimate user*." Opp. at 10 (emphasis added). Indeed, the Complaint alleges that Mentor had knowledge that "significant numbers [of patients] reported systemic ailments *which can only be attributed to gel bleed . . .* but failed to adequately

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 16-7316-DMG (KSx)** | Date | September 15, 2017 |
| Title | *Sarah Ebrahimi v. Mentor Worldwide LLC, et al.* | Page | 8 of 10 |

report that to the FDA . . . ."  Compl. ¶ 51 (emphasis added).  "California law imposes a parallel requirement [to that found in 21 C.FR. § 803.50(a)] under the common law strict liability tort of failure to warn."  *Coleman v. Medtronic, Inc.*, 223 Cal. App. 4th 413, 428 (2014).

The problem with Ebrahimi's allegations concerning the flawed post-approval studies is that she has not sufficiently alleged facts to support her assertion that the unreported "systemic ailments" or negative health effects that patients experienced during the post-approval studies "can only be attributed to gel bleed" or some other actual "adverse event."  *See Weaver v. Ethicon, Inc.*, 2016 WL 7098781, at *6 (S.D. Cal. Dec. 6, 2016) ("These facts present only conclusory allegations that Defendant failed to report adverse events without specific instances of actual adverse events.").  Ebrahimi fails to sufficiently allege what the "systemic ailments" are that the post-approval studies revealed and merely surmises, in conclusory fashion, that they "can only be attributed to gel bleed."

Furthermore, Ebrahimi has not sufficiently alleged a *causal nexu*s between her injuries and Mentor's failure to report adverse events to the FDA.  She also does not allege, for instance, how any "gel bleed" issue would have caused the FDA to require different labeling, especially given that the FDA—and Ebrahimi herself for that matter—was aware of the risk of gel bleeding.  *See* Compl., Ex. 2 (brochure that Ebrahimi examined prior to consenting to surgery) at 24–25 ("**Potential Health Consequences of Gel Bleed**") (emphasis in original).  Ebrahimi states she suffered injuries "[a]s a direct and proximate results of [Mentor's] foregoing acts and omissions."  Compl. ¶ 74.  Yet, she fails to allege how any reporting by Mentor to the FDA would have caused her surgeon to stop using the Implants or her to refrain from having the breast-implant surgery with the devices at issue, considering the potential health consequences of which she was already aware.

Any claim based on the theory of failure to warn consumers and doctors also fails for the same reasons.  Ebrahimi has simply not alleged sufficient facts to support her assertion that Mentor exclusively possessed knowledge of systemic ailments only attributable to gel bleed, the disclosure of which would have *caused* her or her surgeon to refrain from using the breast-implant devices.

Accordingly, for the reasons discussed above, the Court **GRANTS** Mentor's motion to dismiss Ebrahimi's failure-to-warn claim.

Case 2:16-cv-07316-DMG-KS   Document 23   Filed 09/15/17   Page 9 of 10   Page ID #:248

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 16-7316-DMG (KSx)** | Date | September 15, 2017 |
|---|---|---|---|
| Title | *Sarah Ebrahimi v. Mentor Worldwide LLC, et al.* | Page | 9 of 10 |

### 2. Strict Product Liability – Manufacturing Defect

The Complaint alleges that the Implants were "defective in their manufacture in that they did not meet the current good manufacturing practices required by the FDA, standards under which the PMA was submitted and which was accepted by the FDA." Compl. ¶ 78. According to Ebrahimi, the Implants were "inconsistent with specifications of the product as submitted to the FDA." *Id.* ¶ 80. Ebrahimi further alleges that Mentor "violate[d] the FDA's Quality System Regulations and Current Good Manufacturing Practices, 21 C.F.R. § 820.1 *et seq.*, which, among other things, require that each manufacturer put procedures in place to test products for compliance with product specifications. . . ." *Id.* ¶ 81.

Ebrahimi argues that the "MDA does not expressly preempt [her] state-law manufacturing defect claims because they are neither different from nor in addition to the requirements specific in the PMA." Opp. at 13. The Court agrees.

Instead, Ebrahimi's manufacturing-defect claim fails because it is impliedly preempted— as pled, it hinges entirely on conduct she claims violates the FDCA as well as the FDA's Current Good Manufacturing Practices ("CGMPs"). Compl. ¶¶ 78, 81; *Perez*, 711 F.3d at 1118 ("The plaintiff must be suing for conduct that violates the FDCA (or else his claim is expressly preempted by § 360k(a)), but the plaintiff must not be suing because the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman*).") (quoting *In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig.*, 623 F.3d 1200, 1204 (8th Cir. 2010)); *see also Frere v. Medtronic, Inc.*, 2016 U.S. Dist. LEXIS 53104, at *23 (C.D. Cal. Apr. 6, 2016) ("Plaintiff's manufacturing defect claim is impliedly preempted under *Buckman*, because Plaintiff's entire claim rests on conduct Plaintiff claim [sic] that Defendants violated the FDA's CGMPs.").

The Court therefore **GRANTS** Mentor's motion to dismiss Ebrahimi's strict liability manufacturing-defect claim.

### 3. Negligence Per Se

"Negligence per se is not a separate cause of action [under California law] but is the application of an evidentiary presumption provided by Cal. Evid. Code § 669." *Carson v. Depuy Spine, Inc.*, 365 F. App'x 812, 815 (9th Cir. 2010); *see also Vann v. Aurora Loan Servs. LLC*, 2011 WL 2181861, at *3 (N.D. Cal. June 3, 2011) ("Negligence per se is not a separate cause of action, and it does not provide a private right of action for violations of a statute or regulation.")

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | | |
|---|---|---|---|---|
| Case No. | CV 16-7316-DMG (KSx) | | Date | September 15, 2017 |
| Title | *Sarah Ebrahimi v. Mentor Worldwide LLC, et al.* | | Page | 10 of 10 |

(citing *Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1285 (2006)).  Here, while Mentor raises this issue in its motion to dismiss, Ebrahimi fails to address it.  *See* Opp. at 14.

Since negligence per se is not a stand-alone cause of action under California law, the Court **GRANTS** Mentor's motion to dismiss the claim.  *See E. J. v. United States*, 2013 U.S. Dist. LEXIS 163185, at *9 (N.D. Cal. Nov. 14, 2013) ("Plaintiffs will have an opportunity to argue that [negligence per se] and other evidentiary doctrines should be applied at a later stage of this litigation.  At the pleading stage, however, discussion of the applicability of negligence per se is premature.").

## IV.
## CONCLUSION

In light of the foregoing, Defendant's motion to dismiss is **GRANTED** in its entirety with leave to amend.  Plaintiff shall file any amended complaint within 21 days from the date of this Order, and Defendant shall file its response within 21 days after the service and filing of an amended complaint.

**IT IS SO ORDERED.**