TUCKER ELLIS LLP
MOLLIE F. BENEDICT SBN 187084
mollie.benedict@tuckerellis.com
MONEE TAKLA HANNA SBN 259468
monee.hanna@tuckerellis.com
515 South Flower Street, Forty-Second Floor
Los Angeles, CA 90071-2223
Telephone: 213.430.3400
Facsimile: 213.430.3409

DUSTIN B. RAWLIN, appearance *pro hac vice*
dustin.rawlin@tuckerellis.com
950 Main Street, Suite 1100
Cleveland, OH 44113-7213
Telephone: 216.592.5000
Facsimile: 216.592.5009

Attorneys for Defendant MENTOR WORLDWIDE LLC

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

SARA EBRAHIMI,

Plaintiff,

v.

MENTOR WORLDWIDE LLC; JOHNSON & JOHNSON SERVICES, INC.

Defendants.

Case No. 2:16-cv-07316-DMG-KS

Hon. Dolly M. Gee

**DEFENDANT MENTOR WORLDWIDE LLC'S NOTICE OF MOTION AND RULE 12(b)(6) MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

[Filed concurrently with Memorandum of Points and Authorities; Request for Judicial Notice; and [Proposed] Order]

**Date:** December 1, 2017
**Time:** 9:30 A.M.
**Courtroom:** 8C

**TO PLAINTIFF SARA EBRAHIMI AND HER ATTORNEY OF RECORD:**

**PLEASE TAKE NOTICE** that on December 1, 2017, at 9:30 a.m. or as soon thereafter as the matter may be heard in Courtroom 8C of the above-referenced court, located at 350 W. 1st Street, Los Angeles, California, 90012, Defendant Mentor Worldwide LLC ("Mentor") will and does hereby move to dismiss Plaintiff's First

TUCKER ELLIS LLP
Chicago ◆ Cleveland ◆ Columbus ◆ Denver ◆ Houston ◆ Los Angeles ◆ St. Louis ◆ San Francisco

Amended Complaint in its entirety, with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6).

This Motion is based on the grounds that Plaintiff Sara Ebrahimi's claims are expressly preempted by the Medical Device Amendments ("MDA") to the Federal Food, Drug and Cosmetic Act ("FDCA") because the device at issue in this action, a Mentor MemoryGel Silicone Breast Implant, is a Class III medical device that was evaluated and approved pursuant to the U.S. Food and Drug Administration's ("FDA") pre-market approval ("PMA") process. *See Riegel v. Medtronic, Inc.*, 552 U.S. 312 (2008). To the extent Plaintiff's claims seek to enforce federal regulations governing the device, they are also impliedly preempted under *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001).

This Court previously found Plaintiff's claims preempted but allowed Plaintiff leave to amend. Sept. 15, 2017 Order ("Order") [Doc. 23]. Plaintiff's latest attempt also falls short, adding only vague and unsupported allegations, which are insufficient. The First Amended Complaint ("FAC") still lacks sufficient factual allegations to support any plausible claims against Mentor that avoid express and implied preemption and dismissal with prejudice is appropriate. *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Lastly, the Plaintiff seeks injunctive relief against Mentor, asking this Court to encroach on an area of authority reserved to the FDA under the doctrine of primary jurisdiction. The appropriate response to Plaintiff's request for injunctive relief is to dismiss and defer to the FDA's authority in this area.

This Motion is based upon this Notice of Motion and Motion; the attached Memorandum of Points and Authorities in support thereof; the concurrently filed Request for Judicial Notice; the pleadings and documents on file in this case and on such other written or oral arguments as may be presented at or before the hearing on this Motion.

///

This motion is made following the conference of counsel pursuant to L.R. 7-3 which was initiated on October 22, 2017.

DATED: October 27, 2017 TUCKER ELLIS LLP

By: */s/Monee Takla Hanna*
Mollie F. Benedict
Monee Takla Hanna
Attorneys for Defendant Mentor Worldwide LLC

TUCKER ELLIS LLP
Chicago ◆ Cleveland ◆ Columbus ◆ Denver ◆ Houston ◆ Los Angeles ◆ St. Louis ◆ San Francisco

TUCKER ELLIS LLP
Chicago ◆ Cleveland ◆ Columbus ◆ Denver ◆ Houston ◆ Los Angeles ◆ St. Louis ◆ San Francisco

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION AND SUMMARY OF ARGUMENT .................................. 1

II. ARGUMENT ................................................................................ 3

A. Plaintiff's Failure to Warn Claim Still Fails. .......................................... 3

1. Plaintiff still fails to plead a parallel failure to warn claim. ......................................................................... 3

2. Plaintiff still fails to allege what the "systemic ailments" are that the post-approval studies revealed or that they "can only be attributed to gel bleed" .......................... 3

3. Plaintiff still fails to allege a causal nexus between the alleged violation and her claimed injury. ...................................... 4

B. Plaintiff's Manufacturing Defect Claim Still Fails. ................................ 5

C. Granting Plaintiff's Request for Injunctive Relief Would Usurp the Primary Jurisdiction of the FDA. ............................................ 6

III. CONCLUSION ............................................................................ 8

TUCKER ELLIS LLP
Chicago ◆ Cleveland ◆ Columbus ◆ Denver ◆ Houston ◆ Los Angeles ◆ St. Louis ◆ San Francisco

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aaronson v. Vital Pharms., Inc.*,
No. 09-CV-1333 W(CAB), 2010 WL 625337 (S.D. Cal. Feb. 17, 2010) .................... 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................... 2

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) .......................................................................... 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................ 2, 3

*Bernhardt v. Pfizer, Inc.*,
Nos. 00 Civ. 4042 LMM, 00 Civ. 4379 LMM, 2000 WL 1738645 (S.D.N.Y. Nov. 22, 2010) ........................................................................................ 7

*Clark v. Time Warner Cable*,
523 F.3d 1110 (9th Cir. 2008) ........................................................................ 7

*Cohen v. Guidant Corp.*,
No. CV-05-8070-R, 2011 WL 637472 (C.D. Cal. Feb. 15, 2011) ............................. 6

*Dilley v. C.R. Bard, Inc.*,
No. 2:14-cv-01795-ODW (ASx), 2014 WL 1338877 (C.D. Cal. Apr. 3, 2014) ......... 6

*Hawkins v. Medtronic, Inc.*,
No. 1:13-CV-00499 AWI SKO, 2014 WL 346622 (E.D. Cal. Jan. 30, 2014) ............ 6

*Herazo v. Whole Foods Market, Inc.*,
No. 14-61909-CIV, 2015 WL 4514510 (S.D. Fla. July 24, 2015) ............................. 7

*In re Breast Implant Litig.*,
11 F. Supp. 2d 1217, 1227 (D. Colo. 1998) ........................................................ 4

*In re Celexa & Lexapro Mktg. & Sales Practices Litig.*,
779 F.3d 34 (1st Cir. 2015) ........................................................................... 7

*Lucas v. City of Visalia*,
726 F. Supp. 2d 1149 (E.D. Cal. 2010) ............................................................ 6

*Pozefsky v. Baxter Healthcare Corp.*,
No. 92-CV-0314, 2001 U.S. Dist. LEXIS 11813 (N.D.N.Y. Aug. 16, 2001) ............. 4

*Simmons v. Boston Sci. Corp.*,
No. 12-7961, 2013 WL 1207421 (C.D. Cal. Mar. 25, 2013) ..................................... 6

*Stevens v. Boston Sci. Corp.*,
152 F. Supp. 3d 527 (S.D.W. Va. 2016) ........................................................ 7

*Syntek Semiconductor Co. v. Microchip Tech. Inc.*,
307 F.3d 775 (9th Cir. 2002) ........................................................................ 7

*Weaver v. Ethicon*,
No. 16cv257-GPC (BGS), 2016 WL 7098781 (S.D. Cal. Dec. 6, 2016) ................ 3, 6

**RULES**

Fed.R.Civ.P. 10(c)........................................................................................ 1

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

TUCKER ELLIS LLP
Chicago ◆ Cleveland ◆ Columbus ◆ Denver ◆ Houston ◆ Los Angeles ◆ St. Louis ◆ San Francisco

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Sara Ebrahimi was implanted with Mentor's MemoryGel silicone gel-filled breast implants in 2013. FAC ¶ 16. Mentor's breast implants are Class III medical devices which received pre-market approval from the FDA in 2006 following the submission of extensive scientific testing and clinical trials. Plaintiff claims that she developed vague, non-specific symptoms that she related to gel bleed of her breast implants. *See* FAC ¶¶ 17, 19–22. Gel bleed is a well-known, inherent risk of breast implants which is clearly warned about in Mentor's FDA-approved Product Insert Data Sheet ("PIDS") accompanying the products and the Patient Brochure Plaintiff read before her surgery.[1] *See* FAC, Ex. 2, Patient Brochure at 24–25 ("Potential Health Consequences of Gel Bleed"); Ex. 9, PIDS at 20 ("Potential Health Consequences of Gel Bleed").

In a transparent attempt to get around established Supreme Court precedent and a dozen district court opinions over the last decade directly on point, *see* Def.'s Memo. in Supp. of Mot. to Dismiss [Doc. 15] at 19–20 (collecting cases), Plaintiff makes unfounded allegations that Mentor has – somehow – violated its PMA conditions by failing to properly conduct post-approval studies. Plaintiff makes this implausible claim despite the fact that those studies are being conducted under the watchful eye of the FDA with periodic reports being made directly to the FDA. Indeed, all of the allegations in Plaintiff's FAC regarding Mentor's post-approval studies are ripped directly from the FDA's website on post-approval studies and from the FDA's own report on Mentor's post-approval studies. *Compare* FAC ¶¶ 27–49 *with* FAC Ex. 3–8 [Doc. 24-3–24-8] & Ex. 1 to Mentor's Request for Judicial Notice, FDA Update on the Safety of Silicone Gel-Filled Breast Implants ("FDA Update"), Executive Summary at

[1] Because Plaintiff attached the PIDS and Patient Brochure as Exhibits to the FAC, they are considered "part of the pleading for all purposes" and may be considered by the Court in connection with Mentor's Motion to Dismiss. Fed. R .Civ. P. 10(c).

5–21. Plaintiff's claim that Mentor has violated federal law or regulations conducting studies scrutinized by the FDA, when the FDA itself has reported the ongoing results of those studies and has not concluded that Mentor violated its PMA obligations, is baffling.

Plaintiff's initial Complaint alleged claims for strict liability failure to warn, strict liability manufacturing defect and negligence *per se*. Most of Plaintiff's Complaint focused on Mentor's post-approval studies. Mentor moved to dismiss each of these claims on multiple grounds, including implied and express preemption, and because California does not recognize a claim for negligence *per se*. *See, e.g.*, Def.'s Memo. in Supp. of Mot. to Dismiss [Doc. 15].[2]

This Court granted Mentor's motion to dismiss, holding that (1) Plaintiff's failure to warn claim was impliedly preempted because she identified no parallel state-law duty to conduct post-approval "follow-through studies"; (2) Plaintiff's failure to warn claim also failed because she did not sufficiently allege a causal nexus between her injuries and Mentor's alleged failure to report adverse events to the FDA, *i.e.*, that "Mentor exclusively possessed knowledge of systemic ailments only attributable to gel bleed, the disclosure of which would have *caused* her or her surgeon to refrain from using the breast-implant devices"; (3) Plaintiff's manufacturing defect claim was impliedly preempted because it hinges entirely on conduct that she claims violates the FDCA and FDA Current Good Manufacturing Practices; and (4) Plaintiff's negligence *per se* claim is not a stand-alone cause of action under California law. *See, e.g.*, Order [Doc. 23] at 6–10.

Plaintiff filed a First Amended Complaint ("FAC") on October 6, 2017 which includes claims for strict liability failure to warn and strict liability manufacturing defect. That FAC includes only nine paragraphs of new substantive factual allegations, none of which change the Court's initial assessment of Plaintiff's claims.

---

2 Mentor will not repeat all of its arguments for dismissal here, but incorporates the arguments made in its initial Motion to Dismiss by reference.



TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

## II. ARGUMENT

### A. Plaintiff's Failure to Warn Claim Still Fails.

#### 1. Plaintiff still fails to plead a parallel failure to warn claim.

Plaintiff still premises her failure to warn claim primarily on the allegation that Mentor violated its PMA post-approval conditions relating to its post-approval studies. *See*, *e.g.*, FAC at ¶¶ 27–54. As this Court held, there is no state-law duty to conduct post-approval studies. *See* Order at 7. The FDA has exclusive authority to enforce Mentor's compliance with post-approval studies. Thus, Plaintiff's failure to warn claim remains impliedly preempted under *Buckman*.

#### 2. Plaintiff still fails to allege what the "systemic ailments" are that the post-approval studies revealed or that they "can only be attributed to gel bleed"

This Court also held that Plaintiff had not "not sufficiently alleged facts to support her assertion that the unreported 'systemic ailments' or negative health effects that patients experienced during the post-approval studies 'can only be attributed to gel bleed' or some other actual 'adverse event.'" Order at 8. She further "fail[ed] to sufficiently allege what the 'systemic ailments' are that the post-approval studies revealed and merely surmise[d], in conclusory fashion, that they 'can only be attributed to gel bleed.'" *Id.* (citing *Weaver v. Ethicon*, 2016 WL 7098781, at *6 (S.D. Cal. Dec. 6, 2016) ("These facts present only conclusory allegations that Defendant failed to report adverse events without specific instances of actual adverse events.")). Nothing in the FAC changes this fact. Plaintiff still does not allege what "systemic ailments" were supposedly revealed by Mentor's post-approval studies or how they "can only be attributed to gel bleed." *Compare* Compl. at ¶ 51 *with* FAC at ¶ 51 (allegation remains the same). Notably, the FDA itself did not attribute the handful of cases of reported "systemic ailments" (such as connective tissue disease) that arose in patients in post-approval studies to gel bleed. *See generally* FDA Update. Indeed, the FDA Update does not mention gel bleed. This is an important point because Plaintiff's allegations

must be *plausible*. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2009) (Plaintiff must "state a claim to relief that is plausible on its face."). And Plaintiff's allegations – unanchored to facts – are not plausible.[3]

As the Court noted, "[Plaintiff] has simply not alleged sufficient facts to support her assertion that Mentor exclusively possessed knowledge of systemic ailments only attributable to gel bleed." Order at 8. That is because she cannot.

3. Plaintiff still fails to allege a causal nexus between the alleged violation and her claimed injury.

Most glaringly, Plaintiff still fails to adequately allege causation. This Court previously held that Plaintiff had

> [N]ot sufficiently alleged a *causal nexus* between her injuries and Mentor's [alleged] failure to report adverse events to the FDA. . . . [S]he fails to allege how any reporting by Mentor to the FDA would have caused her surgeon to stop using the Implants or her to refrain from having the breast-implant surgery with the devices at issue, considering the potential health consequences of which she was already aware.

Order at 8 (emphasis in original). She still makes no such allegations in the FAC.

As this Court keenly observed, "[s]he also does not allege, for instance, how any 'gel bleed' issue would have caused the FDA to require different labeling, especially

---

[3] Following the breast implant litigation of the 1990s, which was premised on the later debunked junk science claim that silicone breast implants cause systemic ailments and autoimmune disease (like Plaintiff claims here), it became the consensus of the scientific and medical community that there is no connection between breast implants and an increase in the likelihood of any disease. *See Pozefsky v. Baxter Healthcare Corp.*, No. 92-CV-0314, 2001 U.S. Dist. LEXIS 11813, at *9–12 (N.D.N.Y. Aug. 16, 2001). There are more than 30 published epidemiological studies concluding that silicone breast implants do not cause disease. *See, e.g.*, *In re Breast Implant Litig.*, 11 F. Supp. 2d 1217, 1227 (D. Colo. 1998) (noting that "[e]very controlled epidemiological study concludes that silicone breast implants do not double the risk of any known disease"); *Pozefsky*, 2001 U.S. Dist. LEXIS 11813, at *12. Thus, the overwhelming weight of epidemiological evidence goes against Plaintiff's claim here. And ultimately, Mentor produced compelling scientific evidence of the safety and effectiveness of its breast implants to receive pre-market approval from the FDA in 2006.

given that the FDA – and Ebrahimi herself for that matter – was aware of the risk of gel bleeding." Order at 8 (citing Compl., Ex. 2 (brochure that Plaintiff examined prior to consenting to surgery) at 24–25 ("Potential Health Consequences of Gel Bleed"). *See also* FAC, Ex. 2 (same); Ex. 9 (PIDS) at 20 (same). She still makes no such allegations in the FAC.

Plaintiff still alleges that Mentor failed to warn the FDA, physicians and her about gel bleed. FAC ¶ 58. But the risk of gel bleed was specifically discussed in the PIDS. FAC, Ex. 9 (PIDS) at 20. Plaintiff reviewed Mentor's Patient Brochure—which includes gel bleed warnings—prior to surgery. *See* FAC ¶ 14 & Ex. 2. Contrary to Plaintiff's allegations, everyone – the FDA, physicians and even Plaintiff – was warned about the phenomenon of gel bleed. Which is why Plaintiff's FAC does not – and cannot – allege that "Mentor exclusively possessed knowledge of systemic ailments only attributable to gel bleed the disclosure of which would have *caused* her or her surgeon to refrain from using the breast implant devices." Order at 8. Plaintiff's failure to warn claim must be dismissed.

**B. Plaintiff's Manufacturing Defect Claim Still Fails.**

Plaintiff's first attempt at pleading a manufacturing defect claim was deemed preempted because "it hinges entirely on conduct she claims violates the FDCA as well as the FDA's cGMPs." Order at 9. In an attempt to avoid the same fate, Plaintiff summarily deleted the allegation in her second cause of action relating to cGMPs, and now alleges simply that the product was manufactured defectively in that "the implant differed from the manufacturer's design or specifications or from other typical units of the same product line." FAC ¶ 79. In lieu of explicitly identifying the cGMPs in her FAC, Plaintiff added allegations directly citing to the Code of Federal Regulations sections encompassing the cGMPs applicable to medical devices. *See* FAC ¶ 53(d), (e), (g). Plaintiff then alleges that "[h]ad Defendants fulfilled these obligations, which federal and state law required them to do, Plaintiffs injuries would not have occurred.



TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

Defendants failed to do so." FAC ¶ 54. To the extent Plaintiff continues to rely on violations of the cGMPs, her claim remains impliedly preempted. *See* Order at 9.

To the extent Plaintiff does not identify which federal laws and regulations were violated, her claim "must fail because without specifying the federal requirements and the duties they impose, it is impossible to determine whether any state law duties lie parallel." *Hawkins v. Medtronic, Inc.*, No. 1:13-CV-00499 AWI SKO, 2014 WL 346622, at *9 (E.D. Cal. Jan. 30, 2014).

Moreover, Plaintiff's FAC is silent on setting forth what the claimed defect actually is. "[A] plaintiff alleging a manufacturing defect 'must identify/explain how the [product] either deviated from [the manufacturer's] intended result/design or how the [product] deviated from other seemingly identical [products]. A bare allegation that the [product] had 'a manufacturing defect' is an insufficient legal conclusion.'" *Dilley v. C.R. Bard, Inc.*, No. 2:14-cv-01795-ODW (ASx), 2014 WL 1338877, at *3 (C.D. Cal. Apr. 3, 2014) (quoting *Lucas v. City of Visalia*, 726 F. Supp. 2d 1149, 1155 (E.D. Cal. 2010)). Furthermore, "[a] plaintiff cannot merely assert that the device violated federal standards but must provide some allegation regarding 'the nature of the alleged … defect as it relates to the FDA approval process.'" *Weaver v. Ethicon, Inc.*, 2016 WL 7098781 at *4 (quoting *Simmons v. Boston Sci. Corp.*, No. 12-7961, 2013 WL 1207421, at *4 (C.D. Cal. Mar. 25, 2013); *see also Cohen v. Guidant Corp.*, No. CV-05-8070-R, 2011 WL 637472, at *2 (C.D. Cal. Feb. 15, 2011) (dismissing plaintiff's manufacturing defect claim because "Plaintiff has not provided any factual support in his Complaint that there is a defect in his pacemaker, much less that the defect occurred as a result of Defendant's violation of FDA regulations related to his device"). Plaintiff has neither identified a specific manufacturing defect nor linked such defect to a violation of specific federal regulations. Her claim must be dismissed.

### C. Granting Plaintiff's Request for Injunctive Relief Would Usurp the Primary Jurisdiction of the FDA.

That Plaintiff's claims are preempted is also manifestly evident from the relief

sought – injunctive relief requiring a change to Mentor's warnings or prohibiting Mentor from selling its implants at all. These are decisions within the exclusive purview of the FDA.

The primary jurisdiction doctrine "permits courts to determine 'that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 758 (9th Cir. 2015) (quoting *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008)). In evaluating primary jurisdiction, the court considers "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 781 (9th Cir. 2002).

Courts often invoke the primary jurisdiction doctrine where a state-law decision could interfere with a federal regulatory scheme. *Aaronson v. Vital Pharms., Inc.*, No. 09-CV-1333 W(CAB), 2010 WL 625337, at *3 (S.D. Cal. Feb. 17, 2010). The doctrine has been applied in cases involving requests for injunctive relief relating to FDA-approved or FDA-cleared products. *See, e.g., In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, 779 F.3d 34, 38–39, 40–43 (1st Cir. 2015) (affirming grant of motion to dismiss on implied preemption and holding plaintiffs' request for injunctive relief to change drug's label conflicted with FDA's authority); *Stevens v. Boston Sci. Corp.*, 152 F. Supp. 3d 527, 531–38 (S.D.W. Va. 2016) (staying case under doctrine of primary jurisdiction pending referral to FDA); *Herazo v. Whole Foods Market, Inc.*, No. 14-61909-CIV, 2015 WL 4514510, at *4–5 (S.D. Fla. July 24, 2015) (staying case under doctrine of primary jurisdiction pending referral to FDA); *Bernhardt v. Pfizer, Inc.*, Nos. 00 Civ. 4042 LMM, 00 Civ. 4379 LMM, 2000 WL 1738645, at *3 (S.D.N.Y.

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Denver ♦ Houston ♦ Los Angeles ♦ St. Louis ♦ San Francisco

Nov. 22, 2010) (staying case under doctrine of primary jurisdiction pending referral to FDA).

This case falls squarely within the primary jurisdiction doctrine. Plaintiff requests "[e]quitable relief in the form of an injunction prohibiting the illicit conduct" described in the FAC. *See* FAC, Prayer for Relief. This request for injunctive relief specifically challenges the FDA's authority approving Mentor's warnings for its breast implants, the FDA's authority in monitoring and overseeing Mentor's post-approval studies, and, ultimately, the FDA's authority to grant pre-market approval that Mentor's breast implants are safe and effective. The FDA has regulatory authority over breast implants, has issued specific regulations regarding their warnings and labeling, and has the necessary jurisdiction to enforce the regulations. For these reasons, the Court should dismiss Plaintiff's claims, and defer to the primary jurisdiction of the FDA.[4]

## III. CONCLUSION

Based on the above, Defendant Mentor Worldwide LLC respectfully requests that the Court enter an order granting Defendant's Rule 12(b)(6) Motion to Dismiss and dismiss Plaintiff's action, with prejudice, in its entirety.

DATED: October 27, 2017

TUCKER ELLIS LLP

BY: */S/Monee Takla Hanna*
Mollie F. Benedict
Monee Takla Hanna
Attorneys for Defendant Mentor Worldwide LLC

---

[4] To be clear, Mentor does not believe there are any issues for the FDA to resolve. The FDA has studied these issues extensively over years and resolved any issues in favor of the safety and effectiveness of Mentor's breast implants by granting them pre-market approval; that is why Plaintiff's claims should be dismissed as preempted.

TUCKER ELLIS LLP
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of October, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing.

/s/ *Monee Takla Hanna*
Monee Takla Hanna