TUCKER ELLIS LLP
MOLLIE F. BENEDICT SBN 187084
mollie.benedict@tuckerellis.com
MONEE TAKLA HANNA SBN 259468
monee.hanna@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071-2223
Telephone: 213.430.3400
Facsimile: 213.430.3409

DUSTIN B. RAWLIN, *pro hac vice*
dustin.rawlin@tuckerellis.com
950 Main Street, Suite 1100
Cleveland, OH 44113-7213
Telephone: 216.592.5000
Facsimile: 216.592.5009

Attorneys for Defendant MENTOR WORLDWIDE LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| SARA EBRAHIMI,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MENTOR WORLDWIDE LLC;<br>JOHNSON & JOHNSON SERVICES,<br>INC.<br><br>　　　　Defendants. | Case No. 2:16-cv-07316-DMG-KS<br><br>Hon. Dolly M. Gee<br><br>**DEFENDANT MENTOR WORLDWIDE LLC'S REPLY IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**<br><br>**Date:**　　　December 15, 2017<br>**Time:**　　　9:30 A.M.<br>**Courtroom:**　8C |

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

In her belatedly filed opposition to Defendant Mentor Worldwide LLC's ("Mentor") Motion to Dismiss, Plaintiff misinterprets the applicable law and ignores Defendant's arguments. Plaintiff again attempts to evade express and implied preemption by disguising allegations of "failure to complete studies" as a claim for "failure to report adverse events." Plaintiff does not, however, set forth any actual adverse events that Mentor failed to report. Her failure to warn claim is based on nothing more than conclusory assumptions atop unfounded deductions, which is insufficient to survive dismissal. Likewise, Plaintiff's manufacturing defect claim is devoid of factual allegations necessary to sustain a non-preempted parallel claim. At bottom, Plaintiff cannot fix the problems inherent in her original and First Amended Complaints which led to dismissal. *See* Order of Sept. 15, 2017 [Doc. 23] at 7, reported as *Ebrahimi v. Mentor Worldwide LLC*, No. CV 16-7316-DMG, 2017 WL 4128976, -- F. Supp. 2d -- (C.D. Cal. 2017); Order of Nov. 14, 2017 [Doc. 27]. Accordingly, Plaintiff's Second Amended Complaint should be dismissed in its entirety with prejudice.

### II. ARGUMENT

#### A. Plaintiff Does Not Assert A Properly Pleaded Failure-to-Warn Claim That Survives Preemption

##### 1. Plaintiff has not pled facts supporting a parallel failure-to-warn claim – her claims are based on follow-through studies and impliedly preempted.

Plaintiff's failure to warn claim is still premised entirely on the dubious allegation that because Mentor failed to complete its post-approval studies or have sufficient follow-up that it must necessarily follow that Mentor failed to report adverse events to the FDA. Pl.'s Opp. at 5–8. Plaintiff attempts to backpedal from her previous reliance on post-approval studies, hedging that Plaintiff "does not premise either of her

causes of action *solely* on the violation of the FDA's premarket approval ("PMA") conditions." *Id.* at 6. But this assertion is belied by her own arguments. Immediately after this pronouncement, Plaintiff argues that due to low follow-up rates and ineffective study design, "<u>Mentor failed to comply with these [post-approval study] FDA requirements</u>, resulting in a deficiency in the reporting of adverse events." *Id.* at 7 (emphasis added). Plaintiff goes on to argue, "<u>By maintaining inadequate post-approval studies</u>, Mentor willfully ignored adverse effects <u>that would have been apparent if these studies had been conducted at the capacity and efficiency of what had originally been designed for purposes of the PMA</u>." *Id.* at 8 (emphasis added). She concludes, "Under California law, <u>Mentor had a duty</u> to provide adequate warnings, <u>through well-maintained and –reported follow-up studies</u> . . ." *Id.* (emphasis added). Plaintiff's own SAC and brief makes it manifestly clear that Plaintiff's failure to warn claim is based entirely on alleged flaws in Mentor's post-approval studies; fully 31 paragraphs of the SAC – virtually all of the "Factual Allegations" – deal with Mentor's post-approval studies. *See* SAC at ¶¶ 1, 5–6, 13, 27–54, 61. This Court has already held that claims such are impliedly preempted because there is no state-law duty to conduct post-approval studies. *See* Order [Doc. 23] at 7. Plaintiff concedes this point. Pl.'s Opp. at 5 ("While there may be no 'state-law duty to conduct post-approval studies,'"); 7 ("While there is no state-law duty to conduct post-approval studies…").

### 2. Plaintiff pleads no specific instances of adverse events Mentor allegedly failed to report.

Plaintiff continues to make only conclusory allegations that Mentor failed to report adverse events without specific instances of actual adverse events. But "[t]o survive a motion to dismiss on a state law failure to warn claim that is parallel to federal regulations the complaint 'must include allegations of actual adverse events that Defendants did not report.'" *Weaver v. Ethicon*, No. 16cv257-GPC(BGS), 2016 WL 7098781, at *6 (S.D. Cal. Dec. 6, 2016) cited in Order [Doc. 23] at 8.

The SAC is devoid of any allegations of actual adverse events that Mentor did not report. Plaintiff argues that "Mentor failed to report <u>the following adverse events</u> from the six new or ongoing studies commissioned as part of implant's PMA approval, all of which would have led to reports suggesting the device's contribution to death or serious injury: . . . ." Pl.'s Opp. at 2 (emphasis provided). But what follows is not a list of actual adverse events that Mentor failed to report, but simply a recitation of Mentor's PMA study follow-up rates, as set forth in the FDA Update. Exhibit 1 to Mentor's Request for Judicial Notice [Doc. 26]. Plaintiffs cites *zero* adverse events Mentor allegedly failed to report. Plaintiff's conclusory allegations that low follow-up in post-approval studies means adverse events went unreported is pure speculation; it does not necessarily or logically follow. Patients fail to return to their doctors for follow-up for all kinds of reasons, including because they are fine and are *not* experiencing adverse events. Moreover, Plaintiff still "fails to sufficiently allege what the 'systemic ailments' are that the post-approval studies revealed and merely surmises, in conclusory fashion, that they 'can only be attributed to gel bleed.'" Order [Doc. 23] at 8.

Plaintiff simply does not plead any facts that would allow the court to reasonably infer that Mentor failed to report an adverse event. A court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable interferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).[1] Plaintiff thus has not 'nudge[d] [her] claims across the line from conceivable to plausible.'" *Eclectic Props. E., LLC v. Marcus & Millichap Co.,* 751 F.3d 990, 997 (9th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007) (internal alteration omitted)); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

---

[1] *See also Simmons v. Boston Scientific Corp*., No. CV 12-7961 PA (FFMx), 2013 WL 1207421, at *5 (C.D. Cal. Mar. 25, 2013) (dismissing plaintiffs' failure to warn claim because they " provide no factual allegations sufficient to render plausible their claim that Defendants violated this federal obligation [filing adverse event reports].").

Contrary to Plaintiff's assertion, the Ninth Circuit's decision in *Stengel v. Medtronic* does not compel a different result here. 704 F.3d 1224 (9th Cir. 2013). In *Stengel*, the plaintiff-patient had a catheter surgically implanted in his abdomen to facilitate pain relief, which later allegedly caused him paralysis. *Id*. at 1227. The plaintiff pled specific facts showing that after the pain pump was approved for use by the FDA, Medtronic became aware that of the risks of paralysis but had failed to inform the FDA in violation of the MDA. *Id*. Moreover, the FDA discovered the risks, and discovered that Medtronic was aware of the risks when it inspected a Medtronic facility in 2006 and 2007. *Id*. FDA issued Medtronic a warning letter and the device was eventually recalled three years after plaintiff's injury. *Id*. Relying on those facts, the Ninth Circuit found that a failure to report adverse events to the FDA supported a parallel claim that survived express and implied preemption because "Arizona law contemplates a warning to a third party such as the FDA." *Id*. at 1233.

In stark contrast to *Stengel*, in which the plaintiffs came forward with *specific* factual allegations supporting their proposed parallel claim, Plaintiff here provides no factual support to demonstrate her unwarranted claim that Mentor "failed to report adverse events." She points to no FDA warning letters or recalls evidencing a failure to report or any failure to inform the FDA of known risks. In fact, Plaintiff's own allegations and appended exhibits demonstrate that the FDA was well aware of the possibility that gel bleed—which Plaintiff alleges caused her injury—was a potential risk of a properly designed and manufactured Mentor MemoryGel Silicone Breast Implant and granted approval for the device nonetheless. The possibility of gel bleed was communicated to consumers, healthcare providers and the FDA prior to the implantation of Plaintiff's implants through FDA-approved labeling. *See* Patient Brochure at 24–25, Exhibit 2 to Pl.'s SAC; Product Insert Data Sheet at 22, Exhibit 10 to Pl.'s SAC. Plaintiff fails to allege a plausible parallel failure to warn claim.

### 3. Plaintiff's claim is nothing more than a routine failure to warn claim, which is expressly preempted.

Throughout her Second Amended Complaint and her Opposition, Plaintiff makes it clear that her failure to warn claim, at its root, is predicated on alleged deficiencies in the labeling approved by the FDA through the premarket approval process. She admits as much in her opposition when she claims that the "risk of a significant gel bleed was not disclosed or discussed in what Mentor calls its 'Directions for Use' or in its consumer labeling." Pl.'s Opp. at 11. This is despite the fact that, as this Court already observed, the FDA and Plaintiff herself, were warned of the risk of gel-bleed. *See* Order [Doc. 23] at 8; Patient Brochure at 24–25, Exhibit 2 to Pl.'s SAC; Product Insert Data Sheet at 22, Exhibit 10 to Pl.'s SAC. As such, Plaintiff's failure to warn claim essentially seeks a change in the FDA-approved labeling, rendering that claim expressly preempted under *Riegel*. *See* Mentor's Mot. at 3–5.

### B. Plaintiff's Manufacturing Defect Claim is Predicted on Conclusory Allegations and Does Not Constitute a Parallel Claim.

Plaintiff's manufacturing defect claim is not a viable parallel claim as it is composed of nothing more that conclusory allegations. A plaintiff "cannot simply incant the magic words '[defendant] violated FDA regulations' in order to avoid preemption." *Simmons*, 2013 WL 1207421, at *4 (quoting *Wolicki-Gables v. Arrow Int'l, Inc.*, 634 F.3d 1296, 1301 (11th Cir. 2011)). And yet that is what Plaintiff attempts here.

To plead an adequate, non-preempted parallel claim for federal violations in manufacturing, the plaintiff must identify "what went wrong in the manufacturing process and cite[] the relevant FDA manufacturing standards [that were] allegedly violated." *Bass v. Stryker*, 669 F.3d 501, 510 (5th Cir. 2012) (quoting *Funk v. Stryker Corp.*, 631 F.3d 777, 782 (5th Cir. 2011)). In *Bass*, the court found that the plaintiff had met the plausibility standard articulated in *Twombly* based on allegations that a component was adulterated in violation of specifically identified federal regulations, as

well as: the FDA's recently issued warning letter noting the defendants' failure to take measures to reduce a microbial contaminant at a specific point in the manufacturing process; allegations that the contaminant was known to cause the specific injury complained of by the plaintiff; and the defendants' recall of the component at issue after the issuance of the warning letter. *Id.* Such allegations were sufficient to render plausible plaintiff's claim that the defendants violated FDA regulations in the manufacturing process and that these violations resulted in the defect that caused plaintiff's injuries. *Id.* at 510, 515.

Unlike *Bass*, none of the operative facts that allowed the court to find a parallel manufacturing defect claim are present here. She concludes, based on the "*preliminary findings*" of Dr. Pierre Blais, Ph.D., that because he noted subjective "poor quality of workmanship and patch defects" and "shell failure," that the implants did not conform to Mentor's product design.[2] But that is not enough. Plaintiff does not explain Dr. Blais's methodology or the basis for his findings; does not identify any specific defect or how the implants deviated from their PMA-approved specifications; and does not identify any FDA regulation that Mentor violated during the manufacturing of the implant. Plaintiff's Complaint does not plead facts about "what went wrong in the manufacturing process" or "cite[] the relevant FDA manufacturing standards [that

---

[2] While Mentor understands that the Court must take the well-pleaded allegations of the Complaint as true for purposes of a Rule 12(b)(6) motion, Plaintiff's attempted reliance on work by Dr. Pierre Blais should give this Court pause. He has been found, over and over, to be unqualified to testify regarding breast implants. He is not a medical doctor, toxicologist, engineer, or pathologist. He has been excluded in virtually every breast implant case since the 1990s in which he has attempted to testify because what he does is not science and his opinions are creation for litigation. *See Laux v. Mentor Worldwide, LLC*, No. 2:16-cv-01026-ODW (AGR), 2017 WL 5235619, *5, -- F. Supp. 3d ---- (C.D. Cal. Nov. 8, 2017) (finding Blais's opinions "not reliable") (collecting cases); *Cottengim v. Mentor Corp.*, No. 05-161-DLB, 2007 WL 4553995 (E.D. Ky. Sept. 24, 2007); *Alfred v. Mentor Corp.*, 479 F. Supp. 2d 670 (W.D. Ky. 2007); *Pozefsky v. Baxter Healthcare Corp.*, No. 92-CV-0314, 2001 WL 967608 (N.D.N.Y. Aug. 16, 2001); *Havard v. Baxter Int'l Inc.*, No. 1:92CV0863, 2000 U.S. Dist. LEXIS 21316 (N.D. Ohio July 21, 2000).

were] allegedly violated" as Plaintiff concedes she must. *See* Pl.'s Opp. at 10; *Bass*, 669 F.3d at 510. The fact that Plaintiff's SAC makes a conclusory allegation about Blais's findings does not make it a plausible allegation of a manufacturing defect that survives preemption.

Plaintiff's only other purported evidence of a manufacturing violation is the unsupported allegation of the gel bleed itself and unspecified references to generic current Good Manufacturing Practices, which are simply insufficient to establish a viable claim surviving preemption. *Frere v. Medtronic*, No. EDCV 15-02338-BRO(DTBx), 2016 WL 1533524, at *6 (C.D. Cal. Apr. 6, 2016) (cGMPs are "too generic, standing alone, to serve as the basis for [a plaintiff's] manufacturing defect claim."); Order [Doc. 23] at 9. Plaintiff's manufacturing defect claim should thus be dismissed.

### C. Plaintiff Still Has Not Alleged a Causal Nexus Between the Alleged Violations and Her Injuries.

Plaintiff still has not established a causal nexus between her alleged injuries and the alleged federal violations. To properly plead parallel claims that survive preemption, a plaintiff must allege (1) the violation of a specific federal requirement applicable to the device; (2) the violation of an identical state-law duty; and (3) that the predicate federal violation caused his or her injuries." *Millman v. Medtronic*, No. 14-cv-1465, 2015 WL 778779, at *4 n.2 (D.N.J. Feb. 24, 2015).

Plaintiff makes only the conclusory statement that "[i]f the full extent of the product's adverse effects had been reported, neither Plaintiff nor her physician would have selected the product for implantation into her body." Pl.'s Opp. at 8. She has not, however, done more than simply recite the progress of Mentor's post-approval studies, which is available on the FDA website and closely monitored by the FDA. Plaintiff's argument is exactly the same as her argument in opposition to Mentor's motion to dismiss Plaintiff's original Complaint. This Court held that Plaintiff failed to "sufficiently allege a *causal nexus* between her injuries and Mentor's failure to report

adverse events to the FDA." Order [Doc. 23] at 8 (emphasis in original). Plaintiff still does not allege, for instance, "how any 'gel bleed' issue would have caused the FDA to require different labeling, especially given that the FDA—and Ebrahimi herself for that matter—was aware of the risk of gel bleeding." *Id.* Similarly, Plaintiff still "fails to allege how any reporting by Mentor to the FDA would have caused her surgeon to stop using the Implants or her to refrain from having the breast-implant surgery with the devices at issue, considering the potential health consequences of which she was already aware." *Id.* Plaintiff has not even attempted to address the Court's concern regarding a causal nexus. This Court expressly rejected Plaintiff's allegations for a lack of causation, and Plaintiff has not pled any additional facts that would change this Court's prior ruling.

And contrary to Plaintiff's assertion, her allegations are *not* similar to those in *Eidson v. Medtronic, Inc.*, 40 F.Supp.3d 1202 (N.D. Cal. 2014). As Plaintiff herself acknowledges, the *Eidson* plaintiff provided studies demonstrating the actual underreporting of adverse events, which if reported, could have made plaintiff's surgeon aware of the adverse events. As discussed above, Plaintiff does not provide any factual support for her conclusion that Mentor did not report *adverse events*. Furthermore, this Court apparently found no merit in Plaintiff's reliance on *Eidson*, because Plaintiff advanced this argument in her opposition to the first motion to dismiss, but this Court found Plaintiff failed to adequately plead causation nonetheless. Order [Doc. 23] at 8.

### III.  CONCLUSION

Based on the above, Defendant Mentor Worldwide LLC respectfully requests that the Court enter an order granting Defendant's Rule 12(b)(6) Motion to Dismiss and dismiss Plaintiff's action, with prejudice, in its entirety.

DATED:  December 4, 2017          TUCKER ELLIS LLP


                                  By: */s/Monee Takla Hanna*
                                      Mollie F. Benedict
                                      Monee Takla Hanna
                                      Attorneys for Defendant Mentor
                                      Worldwide LLC

# CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of December, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which shall send notification of such filing.

*/s/ Monee Takla Hanna*
Monee Takla Hanna